Submitted March 25, affirmed December 31, 2014, petition for review denied
April 23, 2015 (357 Or 164)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUAN ALONSO CAMACHO-GARCIA,
*Defendant-Appellant.*

Polk County Circuit Court
11P3538; A151781

341 P3d 888

Peter Gartlan, Chief Defender, and Jonah Morningstar, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

### SERCOMBE, P. J.

This case concerns whether the imposed sentence is unconstitutionally disproportionate to defendant's offense. Defendant, who lived with his girlfriend and her daughter—the victim—touched the victim's breasts on two occasions, once over and once under her clothes. The victim was 12 or 13 years old at those times. Defendant made comments related to the victim's sexual development during both incidents. The trial court convicted defendant of one count of sexual abuse in the first degree and sentenced him to the mandatory 75-month term of incarceration required by ORS 137.700(2)(a)(P), part of the mandatory minimum sentences adopted by Ballot Measure 11 (1994). We conclude that the sentence is not disproportionate and, accordingly, affirm.

We draw the following from the transcripts of the plea hearing and sentencing hearing. On the first occasion, defendant hugged the victim from behind and touched her breast over her clothes. He commented that she was developing and "starting to look like a quite good-looking young woman." According to defense counsel, defendant came into contact with the victim's breast inadvertently and this surprised him. On the second, later occasion, defendant commented to the victim that the dress she was wearing was tight and that she looked good. He then reached down under the front of her dress and touched her breasts. According to defense counsel, defendant's intention on this occasion was to "joke with" the victim. Defendant denied that he had any sexual intent in touching the victim, and he acknowledged that his actions were "immature," "dumb and rude."

Defendant was charged with two counts of first-degree sexual abuse under ORS 163.427.[1] The charges identically pleaded that defendant had touched the victim's breasts between December 31, 2009 and October 21, 2011. (Given the victim's date of birth as pleaded in the indictment, she would have been 12 or 13 during that time period.) The

---

[1] Under ORS 163.427(1)(a)(A), a person commits first-degree sexual abuse if the person subjects a victim less than 14 years of age to "sexual contact." "Sexual contact" means "any touching of the sexual or other intimate parts of a person * * * for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6).

second count additionally pleaded that the conduct occurred in a separate criminal episode. Defendant pleaded no contest to Count One, and the state agreed to dismiss Count Two. However, defendant admitted at the plea hearing and during sentencing that both incidents occurred in the manner in which we describe them.

At sentencing, the state recommended that the court impose the mandatory minimum sentence of 75 months' incarceration required by Measure 11. Relying on *State v. Rodriguez/Buck*, 347 Or 46, 217 P3d 659 (2009)—which also involved convictions of first-degree sexual abuse involving victims less than 14 years old—defendant argued that imposing that sentence would be disproportionate in comparison with his offense, in violation of Article I, section 16, of the Oregon Constitution.[2] Defendant and the state agreed that, if not for Measure 11, in light of defendant's offense and lack of criminal history, he would fall under block 8-I of the sentencing guidelines grid, which carries a presumptive sentence of 16 to 18 months' incarceration. Defendant contended that probation was a more appropriate sanction in his circumstances. The victim spoke at the sentencing hearing. In her view, the time defendant already had spent in jail was enough because she and defendant had discussed what had happened, he sounded like he regretted it, and he never abused her again during the year he lived with her after she reported the touching. The trial court concluded that defendant's offense was significantly different from those in *Rodriguez/Buck* because of the statements that defendant had made and because defendant had engaged in "skin-to-skin" contact. As a result, the trial court imposed the 75-month Measure 11 sentence.

Defendant appeals, renewing his argument that his sentence is disproportionate. On review for legal error, *State v. Berry*, 261 Or App 824, 835, 322 P3d 607, *rev den*, 356 Or 163 (2014), we conclude that defendant's case is not one of those rare instances in which the constitution requires us to override a statutory penalty determination.

---

[2] Article I, section 16, provides, in pertinent part, "Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

As noted, under Article I, section 16, "all penalties shall be proportioned to the offense." *See also State v. Wheeler*, 343 Or 652, 667, 175 P3d 438 (2007) (the Oregon framers' concern embodied in Article I, section 16, was "that the penalty imposed on a criminal defendant be 'proportioned' to the specific offense for which the defendant was convicted—that it bear the appropriate 'comparative relation' to the severity of that crime"). The proportionality of a penalty is evaluated by considering whether the imposition of the sentence would "shock the moral sense" of reasonable people. *Rodriguez/Buck*, 347 Or at 58. In *Rodriguez/Buck*, the Supreme Court identified "at least three factors that bear upon [the] ultimate conclusion" whether a sentence would shock the moral sense of reasonable people. *Id.* at 58. Those three factors are "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." *Id.* at 58. As to the first factor, the *Rodriguez/Buck* court observed that the primary determinant of the severity of the penalty is the amount of time the offender must spend in prison or jail. *Id.* at 60. Assessing the gravity of the offense involves "the specific defendant's particular conduct toward the victim that constituted the crime, as well as the general definition of the crime in the statute." *Id.* at 62. In making that assessment,

> "a court may consider, among other things, the specific circumstances and facts of the defendant's conduct that come within the statutory definition of the offense, as well as other case-specific factors, such as characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim."

*Id.* Finally, to determine whether the penalty is proportioned to the gravity of the offense, it is appropriate to consider the gravity of the instant conduct in comparison with other criminal conduct in light of relative harm to victims and society and relative culpability. *Id.* at 63 (citing *Solem v. Helm*, 463 US 277, 292-93, 103 S Ct 3001, 77 L Ed 2d 637 (1983)).

The parties focus on the first *Rodriguez/Buck* factor, and particularly the gravity of defendant's offense. In defendant's view, his offense was at most no more grave that

those in *Rodriguez/Buck*, because all three defendants had no previous criminal convictions and were convicted of one count of first-degree sexual abuse for a brief and "non-egregious" touching of an intimate body part. Defendant further contends that some circumstances surrounding his conduct suggest that his offense was less "egregious" than those of the *Rodriguez/Buck* defendants. For its part, the state focuses on the ways in which this case differs from the *Rodriguez/Buck* cases, contending that the circumstances of defendant's offense make it more grave than the *Rodriguez/Buck* offenses and so support the conclusion that defendant's sentence is not disproportionate.

Thus, the parties' dispute centers on the gravity of the offense in this case, particularly in comparison with the gravity of the offenses in *Rodriguez/Buck*. In *Rodriguez/Buck*, the Supreme Court consolidated two cases. The facts, as set out by the Supreme Court, were as follows: The defendant in *Rodriguez* was an employee of the Hillsboro Boys & Girls Club, where she met the victim. 347 Or at 50. The offense occurred when the victim was 13 years old, in the club's game room, with many youths and at least one other staff member present. *Id.* at 51. The victim was sitting in a chair, and Rodriguez was "standing behind him, caressing his face and pulling his head back; the back of his head was pressed against her breasts." *Id.* (internal quotation marks omitted). The contact lasted for about a minute. The defendant in *Buck* and his friend, Schamp, took the 13-year-old victim and her 15-year-old sister on a fishing trip. *Id.* The girls were daughters of a friend of Schamp's; however, Buck had met them previously. While Schamp and the 15-year-old were elsewhere, Buck sat down next to the victim, who was fishing off a river bank. To keep himself from sliding off the bank, Buck placed his hands on the rock at his sides. His right hand was directly behind the victim, and, when she leaned back to cast her line, her clothed buttocks came into contact with his hand. He immediately moved his hand away but then returned it to its previous position, where the contact occurred once or twice more. When Buck slid down the slope, he pushed himself back up, leveraging against the victim's low back. He asked her if his touching made her uncomfortable. Her response suggested that it did, and

he apologized. When the victim got up to walk away, Buck brushed dirt off the back of her shorts with two swipes of his hand. *Id.* at 52.

In each case, the defendant was convicted of a single count of first-degree sexual assault and, in each case, the trial court concluded that imposing the mandatory Measure 11 75-month sentence would be disproportionate and instead imposed terms of incarceration of less than 18 months. *Id.* at 49. On appeal, we affirmed the convictions but concluded that imposition of the Measure 11 sentences did not violate Article I, section 16. *State v. Buck*, 217 Or App 363, 174 P3d 1106 (2007); *State v. Rodriguez*, 217 Or App 351, 174 P3d 1100 (2007).

On review, the Supreme Court applied the three-factor test and concluded that imposing a Measure 11 sentence in each case would be disproportionate under Article I, section 16. To determine the gravity of the defendants' offenses—part of the first factor—the Supreme Court first examined the statutory definition of the crime of first-degree sexual assault. The court observed that ORS 163.427(1) is one of the "few statutes [to] criminalize such a broad range of conduct." *Rodriguez/Buck*, 347 Or at 69. The court further observed that, as to victims less than 14 years old, ORS 163.427(1) offenses range from "momentary touching of an intimate part" to "prolonged skin to skin genital contact." *Id.* (internal quotation marks omitted). As a result, "Measure 11 imposes the same, mandatory prison term for a 50-year-old man forcing a 13-year-old girl to engage in prolonged skin-to-skin genital contact with him and a 19-year-old forcing the same 13-year-old to touch his clothed buttock for five seconds." *Id.* (emphasis omitted). In light of the gravity of the former conduct, the court concluded that the mandatory 75-month sentence for first-degree sexual abuse is not facially disproportionate. *Id.* On the other hand, however, "because the statute also encompasses conduct that reasonable people would consider far less harmful, defendants [were] entitled * * * to argue that the mandatory sentence, as applied to the particular facts of their cases, is unconstitutionally disproportionate." *Id.* at 69-70 (emphasis and footnote omitted).

In that as-applied analysis, the court also assessed the "specific conduct in which each defendant [had] engaged." *Id.* at 70. The court focused on (1) the brevity of the touching, (2) the nature of the touching (as to Rodriguez, no evidence of "fondling, stroking, rubbing, or palpating"; as to Buck, no evidence of fondling); (3) the lack of evidence of force or threats, (4) the fact that the "sexual" or "intimate" parts involved in the touching were clothed (*i.e.*, "no skin-to-skin" contact), (5) the fact that there was no genital contact and no penetration, and (6) the fact that there was no bodily injury or physical harm. *Id.* The court compared those circumstances with other conduct proscribed by ORS 163.427 and particularly with the conduct in reported cases addressing convictions of first-degree sexual abuse involving victims less than 14 years old. *Id.* at 71-73. The court reported that it had been "unable to find any case in which the contact upon which the convictions were based was as limited as in these cases." *Id.* at 72. Ultimately, the court concluded that the defendants' offenses were relatively much less grave than other first-degree sexual abuse offenses. *Id.* at 74. In light of that conclusion, and after examining the penalties for related sexual offenses and the defendants' lack of criminal history, the court held that a 75-month sentence would be constitutionally disproportionate in each case. *Id.* at 79-80.

Turning to a comparison of the severity of the penalty and the gravity of the offense in this case, the penalty and the statutory definition of the offense are the same as in *Rodriguez/Buck*: 75 months' imprisonment and a wide variety of conduct, ranging from momentary, static touching of clothed buttocks to prolonged, active touching of unclothed genitals. To compare the penalty to defendant's offense, we must consider its particulars—*i.e.*, the specific conduct in which defendant engaged, as well as other case-specific factors, such as characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim.

At the outset, we emphasize that there were two incidents of touching in this case, apparently separated by some period of time. The first time that defendant touched the victim's breast might be viewed as less grave: Defendant

briefly touched the victim's breast over her clothes while hugging her from behind and then made a comment about her sexual development. The second incident, involving a clearly intended and more intrusive touching, is more grave: Defendant remarked that the victim's dress was tight and that she looked good, and then he reached down the front of her dress to touch her breasts. That touching differed from the first in that it involved "skin-to-skin" contact. The touching was also preceded by a sexually suggestive remark—and thus was unlikely to have been perceived by the victim as inadvertent. Also adding to the gravity of the offense, defendant and the victim were in a family-type relationship, with defendant living in the victim's home in a step-parent type role.

Defendant remonstrates that other particulars of his offense detract from its gravity: the lack of force, injury, or fondling; the fact that he touched the victim's breasts and not her vagina or buttocks; that there was not a breach of trust or "ongoing pattern of abuse"; the lack of suggestion that the victim was "seriously harmed" by defendant's conduct; and the victim's request that defendant not be subjected to additional incarceration. We disagree with defendant that there was no breach of trust in this case. Defendant lived in the victim's home as her mother's boyfriend: he was the victim's *de facto* step-father. That is a trust relationship, and defendant breached it. In addition, this case does not involve a single, isolated incident: Defendant touched the victim's breast once, and then he decided to do it again. Although the other factors that defendant cites—the body part involved, the static or active nature of the touching, evidence of injury to or other reaction by the victim—may be relevant to the assessment of the gravity of conduct constituting first-degree sexual abuse, in this case they do not outweigh other circumstances or demonstrate that defendant's offense was of minimal gravity.

Reasonable people could conclude that, when a live-in parental figure makes a sexually suggestive comment to his 12- or 13-year-old step-daughter and then reaches under her clothing to touch her breasts—after having touched her clothed breast previously and having made a comment on her development—that offense is more grave

than some other conduct that constitutes first-degree sexual abuse, including the conduct that constituted first-degree sexual abuse in *Rodriguez/Buck*, and overlaps with some of the more serious conduct involving skin-to-skin contact described in the statute prohibiting first-degree sexual abuse. Having compared the severity of the penalty and the gravity of the crime under the first *Rodriguez/Buck* factor, we do not perceive that the two are disproportionate.

We turn to the other *Rodriguez/Buck* factors. Defendant does not offer an argument based on the second *Rodriguez/Buck* factor—a comparison of the penalty imposed on him to those imposed for other, related crimes. It is true, as the Supreme Court observed in *Rodriguez/Buck*, that the mandatory minimum sentence for first-degree sexual abuse is the same as the mandatory minimum sentence for second-degree sodomy, second-degree rape, and second-degree sexual penetration. 347 Or at 75. There is a relative difference in severity between those crimes and first-degree sexual abuse, and many would view them as generally addressing conduct that is more grave than some conduct constituting first-degree sexual abuse. However, unlike the conduct in *Rodriguez/Buck*, the skin-to-skin conduct here is further from the edge of sexual conduct as defined in ORS 163.305(6). It is also true, again as the Supreme Court observed in *Rodriguez/Buck*, that second-degree sexual abuse, a crime carrying a lower penalty, involves penetration and other acts that are more invasive and likely to be psychologically damaging than mere touching. *Id.* at 76. However, the touching here was more invasive than in *Rodriguez/Buck* because it was skin-to-skin, and more likely to be psychologically damaging because it was repeated and because of the parties' relationship. Accordingly, a comparison of the penalties for other, related offenses does not alter our conclusion.

Finally, we consider the third factor, criminal history. In *Rodriguez/Buck*, the court explained that, in sexual abuse cases, the general rule is that sexual abuse perpetrators repeatedly abuse their victims, but it noted that the defendants' conduct did not follow that general pattern. *Id.* at 78. In this case, while it is true that defendant has no previous criminal history, he admitted to two, escalating

incidents that constitute sexual abuse. In those circum-stances, defendant's lack of criminal history also does not alter our conclusion.

In sum, defendant's sentence would not shock the moral sense of reasonable people and is not disproportionate under Article I, section 16. The trial court did not err.

Affirmed.