STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RAMON ALBERT PADILLA,
*Defendant-Appellant.*

Washington County Circuit Court
C121504CR; A155264

371 P3d 1242

Peter Gartlan, Chief Defender, and Daniel C. Bennett, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Susan G. Howe, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and DeHoog, Judge, and De Muniz, Senior Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Following a jury trial, defendant was found guilty of first-degree sexual abuse. ORS 163.427. He appeals the resulting judgment of conviction, asserting two assignments of error. We reject defendant's first assignment of error without written discussion and write only to address his second assignment, in which he contends that the trial court erred when it imposed a 75-month mandatory prison sentence. Specifically, defendant asserts, citing *State v. Rodriguez/Buck*, 347 Or 46, 217 P3d 659 (2009), that the "sentence of 75 months in prison for one act of first degree sexual abuse in a single incident was constitutionally disproportionate." We conclude that the sentence is not disproportionate and, accordingly, affirm.

Evidence of the following facts was introduced at trial. The victim, A, was 11 years old at the time of the events in question. Defendant, his girlfriend, and their children were friends with A and her family; A had known defendant and his family since she was a young child. A occasionally spent the night at defendant's apartment. On the day at issue, A was visiting defendant's apartment. After watching a movie, A fell asleep. She awoke to find defendant beside her dressed in a robe and using her hand to rub his bare genitals. Defendant then let go of A's hand and began to rub his penis on her clothed genital area. After A turned away in the hope that defendant would stop, he then rubbed his penis on A's buttocks. Eventually, defendant stopped and walked away.

As a result of that incident, defendant was charged with one count of first-degree sexual abuse under ORS 163.427.[1] The state alleged that defendant had subjected A, a person under the age of 14 years, "to sexual contact by causing her to touch the defendant's genitalia." After a trial, the jury found defendant guilty of first-degree sexual abuse.

---

[1] Under ORS 163.427(1)(a)(A), a person commits the crime of first-degree sexual abuse if the person subjects a victim less than 14 years of age to "sexual contact." "Sexual contact" is "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6).

The state recommended that the court impose the mandatory minimum sentence of 75 months of incarceration under Ballot Measure 11. *See* ORS 137.700 (codifying Ballot Measure 11). Relying on *Rodriguez/Buck*, defendant argued that the imposition of that sentence would be disproportionate and would violate Article I, section 16, of the Oregon Constitution. He also noted that he had no criminal history and that, but for Measure 11, he would fall under grid block 8-I of the sentencing guidelines, which provides for a presumptive sentence of 16 to 18 months. As part of its response, the state observed that defendant had engaged in "skin to skin contact" with A and that his additional contact with A through her clothing was also serious. The trial court concluded that this case was distinguishable from *Rodriguez/Buck* and, in light of its "comparison of the severity of the penalty versus the gravity of the crime, the comparison of the penalty with the penalties imposed on other crimes and defendant's criminal history," concluded that the 75-month mandatory sentence was not disproportionate to defendant's offense.

On appeal, defendant renews his contention that the 75-month sentence is disproportionate. On review for legal error, we conclude "that defendant's case *is not* one of those rare instances in which the constitution requires us to override a statutory penalty determination." *State v. Camacho-Garcia*, 268 Or App 75, 77, 341 P3d 888 (2014), *rev den*, 357 Or 164 (2015).

Under Article I, section 16, "all penalties shall be proportioned to the offense." "The proportionality of a penalty is evaluated by considering whether the imposition of the sentence would 'shock the moral sense' of reasonable people." *Camacho-Garcia*, 268 Or App at 78 (quoting *Rodriguez/Buck*, 347 Or at 58). In *Rodriguez/Buck*, the court identified "at least three factors that bear upon [that] ultimate conclusion." 347 Or at 58. Those factors are "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." *Id.* "As to the first factor, the *Rodriguez/Buck* court observed that the primary determinant of the severity of the penalty is the amount of time the offender must

spend in prison or jail." *Camacho-Garcia*, 268 Or App at 78. "Assessing the gravity of the offense involves 'the specific defendant's particular conduct toward the victim that constituted the crime, as well as the general definition of the crime in the statute.'" *Id.* (quoting *Rodriguez/Buck*, 347 Or at 62). As part of that assessment,

> "a court may consider, among other things, the specific circumstances and facts of the defendant's conduct that come within the statutory definition of the offense, as well as other case-specific factors, such as characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim."

*Rodriguez/Buck*, 347 Or at 62. "Finally, to determine whether the penalty is proportioned to the gravity of the offense, it is appropriate to consider the gravity of the instant conduct in comparison with other criminal conduct in light of the relative harm to victims and society and relative culpability." *Camacho-Garcia*, 268 Or App at 78.

In *Camacho-Garcia*, we considered the application of those factors in light of circumstances similar to those at issue in this case. In that case, the defendant touched the breasts of the victim, his girlfriend's daughter, on two occasions, once over her clothes and once under. The victim was 12 or 13 years old at the time.

> "On the first occasion, defendant hugged the victim from behind and touched her breast over her clothes. He commented that she was developing and 'starting to look like a quite good-looking young woman.' According to defense counsel, defendant came into contact with the victim's breast inadvertently and this surprised him. On the second, later occasion, defendant commented to the victim that the dress she was wearing was tight and that she looked good. He then reached down under the front of her dress and touched her breasts. According to defense counsel, defendant's intention on this occasion was to 'joke with' the victim. Defendant denied that he had any sexual intent in touching the victim, and he acknowledged that his actions were 'immature,' 'dumb and rude.'"

*Id.* at 76. Based on that conduct, the defendant was convicted of first-degree sexual abuse and sentenced to 75 months of imprisonment under Measure 11. He asserted that the

sentence was disproportionate, noting, as here, that in light of his "lack of criminal history, he would fall under block 8-I of the sentencing guidelines grid, which carries a presumptive sentence of 16 to 18 months' incarceration." *Id.* at 77.

We considered whether the 75-month minimum mandatory sentence was disproportionate and concluded that it was not. With respect to the first *Rodriguez/Buck* factor, we observed that there had been two incidents of touching, one less grave than the other:

> "The first time that defendant touched the victim's breast might be viewed as less grave: Defendant briefly touched the victim's breast over her clothes while hugging her from behind and then made a comment about her sexual development. The second incident, involving a clearly intended and more intrusive touching, is more grave: Defendant remarked that the victim's dress was tight and that she looked good, and then he reached down the front of her dress to touch her breasts. That touching was different than the first in that it involved 'skin-to-skin' contact. The touching was also preceded by a sexually suggestive remark—and thus was unlikely to have been perceived by the victim as inadvertent. Also adding to the gravity of the offense, defendant and the victim were in a family-type relationship, with defendant living in the victim's home in a step-parent type role."

*Camacho-Garcia*, 268 Or App at 81-82. In our view, under those circumstances, reasonable people could conclude that the offense was "more grave than some other conduct that constitutes first-degree sexual abuse, including the conduct that constituted first-degree sexual abuse in *Rodriguez/ Buck*,[2] and overlaps with some of the more serious conduct

---

[2] As we discussed in *Camacho-Garcia*,

"[i]n *Rodriguez/Buck*, the Supreme Court consolidated two cases. The facts, as set out by the Supreme Court, were as follows: The defendant in *Rodriguez* was an employee of the Hillsboro Boys & Girls Club, where she met the victim. 347 Or at 50. The offense occurred when the victim was 13 years old, in the club's game room, with many youths and at least one other staff member present. *Id.* at 51. The victim was sitting in a chair, and Rodriguez was 'standing behind him, caressing his face and pulling his head back; the back of his head was pressed against her breasts.' *Id.* (internal quotation marks omitted). The contact lasted for about a minute. The defendant in *Buck* and his friend, Schamp, took the 13-year-old victim and her 15-year-old sister on a fishing trip. *Id.* The girls were daughters of a friend of Schamp's; however,

involving skin-to-skin contact described in the statute prohibiting first-degree sexual abuse." *Id.* at 82-83. Accordingly, "[h]aving compared the severity of the penalty and the gravity of the crime," we concluded that the two were not disproportionate. *Id.* at 83.

Analysis of the second *Rodriguez/Buck* factor, the "comparison of the penalty imposed on [the defendant] to those imposed for other, related crimes," and the third factor, the defendant's criminal history, did "not alter our conclusion." *Id.* at 83-84. Although we noted that, "as the Supreme Court observed in *Rodriguez/Buck*, * * * the mandatory minimum sentence for first-degree sexual abuse is the same as the mandatory minimum sentence for second-degree sodomy, second-degree rape, and second-degree sexual penetration," we observed that, "unlike the conduct in *Rodriguez/Buck*, the skin-to-skin conduct here is further from the edge of sexual conduct, as defined in ORS 163.305(6)." *Id.* at 83. Indeed, we emphasized that the fact that the defendant engaged in skin-to-skin touching was important, noting that it was more invasive and likely to be psychologically damaging than the conduct at issue in *Rodriguez/Buck. Id.* We stated that the touching was more invasive "because it was skin-to-skin, and more likely to be psychologically damaging," at least in part, because of the relationship between the victim and the defendant. *Id.*

As to the defendant's lack of prior criminal history, we observed that he admitted to two escalating incidents that constituted sexual abuse. Thus, in sum, we concluded

Buck had met them previously. While Schamp and the 15-year-old were elsewhere, Buck sat down next to the victim, who was fishing off a river bank. To keep himself from sliding off the bank, Buck placed his hands on the rock at his sides. His right hand was directly behind the victim, and, when she leaned back to cast her line, her clothed buttocks came into contact with his hand. He immediately moved his hand away but then returned it to its previous position, where the contact occurred once or twice more. When Buck slid down the slope, he pushed himself back up, leveraging against the victim's low back. He asked her if his touching made her uncomfortable. Her response suggested that it did, and he apologized. When the victim got up to walk away, Buck brushed dirt off the back of her shorts with two swipes of his hand. *Id.* at 52."

268 Or App at 79-80. Under those facts, applying the articulated three-part analysis, the court decided that a 75-month sentence would be constitutionally disproportionate in each case.

that the defendant's sentence "would not shock the moral sense of reasonable people and is not disproportionate under Article I, section 16." *Id.* at 84.

Here, we reach the same conclusion as we did in *Camacho-Garcia*. "Turning to a comparison of the severity of the penalty and the gravity of the offense in this case, the penalty and the statutory definition of the offense are the same as in *Rodriguez/Buck*: 75 months' imprisonment and a wide variety of conduct, ranging from momentary, static touching of clothed buttocks to prolonged, active touching of unclothed genitals." 268 Or App at 81. However, as noted, to compare the severity of the penalty to the gravity of defendant's offense, we consider "the specific conduct in which defendant engaged, as well as other case-specific factors, such as characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim." *Id.*

Here, importantly, the touching that formed the basis of the offense was grave. Defendant caused A, an 11-year-old child, to manually stimulate his bare penis. The presence of intrusive, genital, "skin-to-skin" contact in this case convinces us that the conduct at issue is not on the lesser end of the spectrum of first-degree sexual abuse. Instead, the conduct here is on the serious end of the "variety of conduct" that constitutes first-degree sexual abuse. *Id.* In addition, defendant followed that grave conduct by rubbing his unclothed genitals against the child's vaginal area and, when she tried to escape the contact, continued rubbing against her buttocks. Furthermore, although the conduct is uncharged, defendant subjected A to "forcible compulsion," ORS 163.305(2), by physically forcing and compelling her hand to make sexual contact with his penis. Finally, defendant was in a relationship of trust with A. He was a long-time family friend whom she had known since she was a very young child. All of those circumstances cause us to conclude that the severity of the penalty is not disproportionate to the gravity of the crime in this case.

With respect to the penalty imposed on defendant in this case, as compared to other related crimes, this case is like *Camacho-Garcia* and unlike *Rodriguez/Buck*. Although

the mandatory sentence for first-degree sexual abuse is the same as the mandatory sentence for second-degree sodomy, second-degree rape, and second-degree sexual penetration, the skin-to-skin contact between A's hand and defendant's penis in this case is not near the "edge" of sexual contact, as defined in ORS 163.305(6). *Camacho-Garcia,* 268 Or App at 83. Rather, it is squarely at the center of the conduct so defined. Furthermore, the contact was invasive—indeed, significantly more grave and invasive than the conduct that we considered sufficient to justify a 75-month sentence in *Camacho-Garcia.* And, in light of the relationship between defendant and A's family, defendant's conduct, compared to the conduct at issue in *Rodriguez/Buck,* was more likely to be psychologically damaging to A. *See id.* (considering the likelihood that the defendant's conduct was psychologically damaging in light of his relationship with the victim in analyzing the second *Rodriguez/Buck* factor). Thus, as in *Camacho-Garcia,* a comparison of the penalty in this case and that imposed for other related crimes does not lead to the conclusion that defendant's sentence is disproportionate.

Finally, defendant emphasizes that he has no prior criminal history. Nonetheless, as we explained in *State v. Shaw,* 233 Or App 427, 439, 225 P3d 855, *rev den,* 348 Or 415 (2010), "[a]lthough criminal history is one factor that could, along with other factors, demonstrate that a penalty is disproportionate under the circumstances of a particular case, the lack of prior convictions alone has *never* been sufficient to render an otherwise constitutional penalty disproportionate under Article I, section 16." (Emphasis added.) Here, defendant committed a grave and invasive act of sexual abuse against an 11-year-old child. Defendant's absence of a prior criminal history does not lead to a conclusion that his sentence would shock the moral senses of reasonable people.

In sum, this is not the rare case in which the penalty imposed violates Article I, section 16. Defendant committed a grave offense and received a proportionate penalty. Accordingly, the trial court did not err in imposing the sentence in question.

Affirmed.

**DE MUNIZ, S. J.,** concurring in part, dissenting in part.

I agree with the majority that defendant's conviction should be affirmed. However, I disagree with the majority's conclusion with regard to the constitutionality of the 75-month mandatory minimum sentence imposed in this case. In my view, the actual application of the nonexclusive factors established in *State v. Rodriguez/Buck*, 347 Or 46, 58, 217 P3d 659 (2009), rather than simple fact matching, compels the conclusion that, as applied to this defendant, the 75-month mandatory minimum sentence is unconstitutionally disproportionate in violation of Article I, section 16, of the Oregon Constitution.[1]

It is undisputed that any form of sexual abuse of a child or an adult is an extremely serious criminal act which merits imprisonment.[2] That said, the court made it clear in *Rodriguez/Buck* that "the proportionality requirement of Article I, section 16, is not merely aspirational, but was intended to protect Oregon's citizens against penalties that are disproportionate to their offenses" and that, "when the facts of a particular case demonstrate that the application of the statute to those unique facts would be unconstitutional, it is the obligation of this court to enforce the constitutional provision—our fundamental law—rather than the statute." *Id.* at 80. It is in that context that I apply the *Rodriguez/ Buck* factors in this case.

In determining that imposition of the 75-month mandatory minimum prison sentence in *Rodriguez/Buck* would result in a constitutionally disproportionate sentence, the court considered three nonexclusive factors: "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." *Id.* at 58.

---

[1] Article I, section 16, provides, in part, that "all penalties shall be proportioned to the offense."

[2] Before Measure 11, the sentencing guidelines established, as the presumptive sentence for first-degree sexual abuse, a prison term of 16 to 18 months. A maximum upward departure from the presumptive guideline sentence, for a person with no prior convictions, would result in a sentence of 36 months—compared to the 75-month sentence imposed here. *Rodriguez/Buck*, 347 Or at 73.

Like the defendants in *Rodriguez/Buck*, defendant was convicted of first-degree sexual abuse under ORS 163.427(1)(a)(A), which the court described in *Rodriguez/Buck* as a criminal statute that "covers a broad range of activity, criminalizing a variety of forms and intensity of conduct." 347 Or at 61. In *Rodriguez/Buck*, the court stated that it had reviewed "all the reported first-degree sexual abuse cases decided since the effective date of the 75-month mandatory sentence, and * * * we are unable to find any case in which the contact upon which the convictions were based was as limited as in these cases." *Id.* at 72. According to the court, the more typical cases included *State v. Foreman*, 212 Or App 109, 157 P3d 228 (2007) (defendant touched three-year-old victim's vagina with his hands and penis); *State v. Reed*, 173 Or App 185, 21 P3d 137, *rev den*, 332 Or 559 (2001) (defendant rubbed his penis against six-year-old victim, took the victim's clothes off, and rubbed his penis all over her body); *State v. Cockrell*, 174 Or App 442, 26 P3d 169, *rev den*, 332 Or 656 (2001) (defendant repeatedly rubbed the crotch of his 11-year-old niece); and *State v. Acker*, 175 Or App 145, 27 P3d 1071 (2001), *rev den*, 333 Or 260 (2002) (defendant furnished alcohol to his stepdaughter's 13-year-old friend and touched her breasts and buttocks). *Rodriguez/Buck*, 347 Or at 72.

The court described the defendants' conduct in *Rodriguez/Buck* (back of victim's head came in contact with Rodriguez's clothed breasts; Buck's hand remained on victim's clothed buttocks; and Buck later wiped dirt off the back of victim's shorts) as "insufficiently grave" and "less severe than the conduct in the vast majority of * * * other reported first-degree sexual abuse cases since Measure 11 was passed." *Id.* at 74. To determine where to place a defendant's conduct on a first-degree sexual abuse severity scale, *Rodriguez/Buck* established that a court may consider "the specific circumstances and facts of the defendant's conduct that come within the statutory definition of the offense, as well as other case-specific factors such as characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim." *Id.* at 62.

In that regard, the state appears to argue, and the majority agrees, that defendant's conduct does not fall on the

lower end of any such scale because the victim was 11 years old, defendant used the victim's hand to manually stimulate his bare penis, defendant pushed his penis against the victim's clothed crotch and buttocks area, and defendant was a family friend. I agree that the physical contact between defendant and the victim differs from that of the defendants Rodriguez and Buck and their victims, in that, here, the victim's hand touched defendant's bare penis and defendant rubbed his penis against the victim's clothed crotch and buttocks area. There are, however, similarities. In *Rodriguez/ Buck*, the defendant Rodriguez was a Hillsboro Boys & Girls Club employee who worked with at-risk youth, was in a position of trust with the 13-year-old victim, and breached that trust when she ran her hands along the victim's face and hair as she rubbed his head against her clothed breasts. *Id.* at 50-51. Yet the court described Rodriguez's conduct as "insufficiently grave" and "less severe than the conduct in the vast majority of * * * cases." *Id.* at 74. In doing so, the court pointed out that the first-degree sexual abuse statute includes conduct such as causing a person under the age of 18 to engage in bestiality (ORS 163.427(1)(b)) and sexual contact as a result of forcible compulsion by the wrongdoer (ORS 163.427(1)(a)(B))—resulting in the same 75-month mandatory minimum sentence. *Id.* at 71. Here, although the victim's hand did touch defendant's bare penis, the breach of trust that the state describes in this case is not of the same magnitude as what occurred in *Rodriguez/Buck*.

Utilizing the guidance provided by the court in *Rodriguez/Buck* and applying it here, I conclude that, although defendant's conduct differs from the conduct at issue in *Rodriguez/Buck*, defendant's conduct is, nevertheless, "less severe than the conduct in the vast majority of * * * cases." *Id.* at 74. The contact was brief and occurred only once, the victim's hand was placed on defendant's penis and rubbed on defendant's penis, the victim was clothed, and any contact with the victim's intimate body parts occurred through her clothes. There was no penetration and no physical injury. I conclude that because defendant's conduct falls somewhere on the lower end of a first-degree sexual abuse severity scale, the mandatory 75-month prison sentence imposed here has some initial indicia of disproportionality.

I turn to the second factor. In comparing the penalty imposed (mandatory 75-month prison sentence) with the penalties for related offenses, the court in *Rodriguez/Buck* commented that, when "the penalties for more 'serious' crimes than the crime at issue result in less severe sentences, that is an indication that the challenged penalty may be disproportionate." *Id.* at 63.

Here, having placed the victim's hand on his penis and having briefly contacted the victim's intimate parts through her clothes requires the same lengthy mandatory minimum sentence as the much more serious crimes identified in *Rodriguez/Buck* as "second-degree sodomy, second-degree rape, and second-degree sexual penetration." *Id.* at 75. As to the second factor (comparing the penalties imposed for other related offenses), the state's only assertion—and the one accepted by the majority—is that "defendant's conduct was far more egregious than the conduct at issue in *Rodriguez/Buck*" because defendant "subjected a young child to skin-to-skin contact with his penis," and, therefore, the sentence imposed here is not disproportionate. However, the fact that defendant's physical contact with victim is different than what occurred in *Rodriguez/Buck* is not completely responsive to the concern that is integral to the second factor analysis. In other words, neither the state nor the majority explains why the physical contact that occurred here, which does not involve any form of penetration or oral contact with the victim's or defendant's genitals, is not less grave and less severe than the crimes of second-degree sexual penetration, second-degree rape, and second-degree sodomy, all of which require the same 75-month mandatory minimum sentence. Moreover, nothing in *Rodriguez/Buck* provides any indication that any or every form of skin-to-skin contact automatically renders the imposition of the 75-month mandatory minimum prison sentence constitutionally proportional as a matter of law—which the majority apparently assumes as part of its fact matching in this case. And, as described above, the physical contact that occurred in this case is less grave and less severe than the cases identified by the court in *Rodriguez/Buck* as "more typical" of first-degree sexual abuse. *Id.* at 72.

Like the court in *Rodriguez/Buck*, I conclude that reasonable people would not believe that this defendant's sentence (more than twice as long as the maximum 36-month sentence that could be imposed under the guidelines before Measure 11) is proportioned to his offense, in light of the other substantially more egregious conduct described in other related statutes and subject to the same mandatory minimum 75-month sentence.

Finally, I address the criminal-history factor. With regard to a defendant's criminal history, the court in *Rodriguez/Buck* observed that in the "more common first-degree sexual abuse cases (at least those that have resulted in reported opinions), the contact is not only far more physically invasive and sexually charged, but it has occurred multiple times, rather than only once." *Id.* at 78. In support of the court's observation regarding the "more common" first-degree sexual abuse cases, the court cited *State v. Sullivan*, 217 Or App 208, 174 P3d 1095 (2007), *rev den*, 344 Or 539 (2008), in which the defendant had been convicted of two counts of first-degree sexual abuse for abusing the victim over a four-year period, and *State v. Rhodes*, 149 Or App 118, 941 P2d 1072 (1997), *rev den*, 326 Or 390 (1998), a case in which a 15-year-old defendant, although only charged with one count of first-degree sexual abuse, had touched his nine-year-old sister's vagina beneath her clothes on more than 20 separate occasions. 347 Or at 78. According to the court, a defendant's criminal history is relevant "because a defendant who previously has been convicted of and served sentences for other crimes has demonstrated, by committing additional crimes, that the previously imposed sentences were insufficient to prevent the defendant from returning to his or her criminal behavior." *Id.* at 77.

In emphasizing the importance of the criminal history factor, the court also stated that "[t]raditional understandings of proportionality * * * require us to consider whether a defendant is a repeat offender by considering previous criminal convictions and whether there is evidence of multiple instances of uncharged wrongful conduct." *Id.* at 78. In applying that factor in *Rodriguez/Buck*, the court stated, "[T]he absence of any criminal convictions and the single occurrence of the wrongful conduct support the conclusion

that a 75-month sentence is unconstitutionally disproportionate to the offenses committed." *Id.*

In rejecting defendant's proportionality argument, the majority relies primarily on *State v. Camacho-Garcia*, 268 Or App 75, 341 P3d 888 (2014), *rev den*, 357 Or 164 (2015). In *Camacho-Garcia*, the defendant was convicted of one count of sexual abuse, and he argued that the 75-month mandatory minimum prison sentence was disproportionate to his offense. *Id.* at 76-77. Like the defendants in *Rodriguez/Buck*, Camacho-Garcia did not have a criminal history. *Id.* at 77. However, this court affirmed the mandatory minimum sentence, concluding that the defendant's lack of criminal history was entitled to little or no weight in the *Rodriguez/Buck* three-factor analysis, because the defendant had "admitted to two, escalating incidents that constitute sexual abuse." *Id.* at 83-84.

Here, defendant has no prior criminal history and the contact occurred only once. Application of the *Rodriguez/ Buck* "criminal history" factor to the facts and circumstances of this case weighs, as it did in *Rodriguez/Buck*, toward a conclusion of disproportionality. Unfortunately, the majority ignores the guidance provided by *Rodriguez/Buck* and refuses to give any weight to defendant's lack of any criminal history.

As described above, *Rodriguez/Buck* holds that, in order to determine whether the imposition of a certain criminal penalty "shock[s] the moral sense" of reasonable people, a court must consider three nonexclusive factors. 347 Or at 78-79. I have applied those factors to the facts and circumstances of this case: (1) the relationship between the severity of the penalty and the gravity of defendant's offense—although the physical contact that occurred here can be considered more invasive or intense (although lacking the defendant Rodriguez's egregious breach of public trust) than that which occurred in *Rodriguez/Buck*, it nevertheless falls on the lower end of any first-degree sexual abuse severity scale; (2) the penalties for other related crimes—the same 75-month mandatory minimum sentence is imposed for crimes involving penetration or oral genital contact, though, here, any form of penetration or oral genital contact

is absent; and (3) a defendant's criminal history—the contact occurred only once and defendant has no prior criminal history. Having considered all three of the *Rodriguez/ Buck* factors, I conclude that this case presents another rare circumstance in which the statutorily prescribed penalty is so disproportionate to the offense committed by this defendant that it shocks the moral sense of reasonable people. Accordingly, I conclude that the 75-month mandatory minimum prison sentence, as applied to this defendant, violates Article I, section 16.

Accordingly, I respectfully concur in part and dissent in part.