Argued and submitted February 14, 2020; in A167432, reversed and remanded for resentencing, otherwise affirmed; in A167449, appeal dismissed as moot March 17, 2021

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## IGNACIO LARA-VASQUEZ,
*Defendant-Respondent.*

### Hood River County Circuit Court
17CR14075; A167432 (Control)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## IGNACIO LARA-VASQUEZ,
*Defendant-Appellant.*

### Hood River County Circuit Court
17CR14075; A167449

484 P3d 369

Defendant was convicted of one count of first-degree sexual abuse, ORS 163.427, and one count of third-degree sexual abuse, ORS 163.415, after an incident in which he forcibly touched the clothed buttocks of his girlfriend's 14-year-old daughter. Under Measure 11, the mandatory prison sentence for first-degree sexual abuse is 75 months, and a trial court lacks discretion to impose a lesser sentence. At the same time, a court may impose a lesser sentence if, in the particular circumstances, imposing the mandatory sentence would violate Article I, section 16, of the Oregon Constitution. Here, the trial court concluded that imposing a 75-month sentence on defendant would violate Article I, section 16, and it instead sentenced defendant to 18 months in prison. The state appeals (A167432), arguing that a 75-month sentence would not violate Article I, section 16, and therefore had to be imposed. Defendant separately appeals (A167449), challenging the term of his post-prison supervision. *Held*: The trial court erred by not imposing the 75-month sentence required by Measure 11. Although a 75-month sentence may be harsh in these circumstances, it would not violate Article I, section 16, so the will of the voters must be enforced.

In A167432, reversed and remanded for resentencing; otherwise affirmed. In A167449, appeal dismissed as moot.

John A. Wolf, Judge.

In A167432, Benjamin Gutman, Solicitor General, argued the cause for appellant. Also on the brief was Ellen F. Rosenblum, Attorney General.

In A167432, Bear Wilner-Nugent argued the cause and filed the brief for respondent.

In A167449, Bear Wilner-Nugent argued the cause and filed the brief for appellant.

In A167449, Benjamin Gutman, Solicitor General, argued the cause for respondent. Also on the brief was Ellen F. Rosenblum, Attorney General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

In A167432, reversed and remanded for resentencing; otherwise affirmed. In A167449, appeal dismissed as moot.

**AOYAGI, J.**

Defendant was convicted of one count of first-degree sexual abuse, ORS 163.427, and one count of third-degree sexual abuse, ORS 163.415, after an incident in which he forcibly touched the clothed buttocks of his girlfriend's 14-year-old daughter. The issues before us on appeal pertain solely to defendant's sentence on the first-degree sexual abuse count. Under Measure 11, the mandatory prison sentence for first-degree sexual abuse is 75 months. The trial court concluded that imposing that sentence on defendant would violate Article I, section 16, of the Oregon Constitution and, instead, sentenced defendant to 18 months in prison, to be followed by post-prison supervision for a term of "10 years minus time actually served pursuant to ORS 144.103."

Both the state and defendant appeal. The state contends that the trial court erred in failing to impose the 75-month prison sentence required by Measure 11. Defendant contends that his 18-month prison sentence should be upheld but that the trial court erred in stating his term of post-prison supervision in a manner other than a determinate number of months. For the following reasons, we agree with the state that imposing the 75-month prison sentence required by Measure 11 would not violate Article I, section 16, and that the trial court therefore erred in imposing a different sentence. Accordingly, we reverse and remand for resentencing. Given our disposition of the state's appeal, we dismiss defendant's appeal as moot.

## FACTS

We describe the facts underlying defendant's conviction in the light most favorable to the state. *State v. Smith*, 277 Or App 709, 710, 372 P3d 549, *rev den*, 360 Or 423 (2016).

Defendant was in a romantic relationship with Z's mother. In April 2015, when Z was 13 years old, defendant moved into Z's home. Defendant was in his 50's at the time. Defendant financially supported the family throughout his relationship with Z's mother. Defendant was also Z's primary

caregiver at times. For example, soon after he moved in, Z's mother was absent from the home for two months while in immigration detention, and defendant was the only adult in the home with Z and her three younger siblings. Defendant described himself at trial as a "father figure" to Z.

Z always felt uncomfortable with defendant. Defendant frequently gave Z "weird looks," told Z's mother that Z was "really pretty" and "worth a lot," and looked Z up and down. Defendant often discreetly patted Z's buttocks. In September 2015, on or immediately after Z's fourteenth birthday, defendant gave Z a "birthday spanking."

In March 2016, Z told defendant that she was pregnant by her boyfriend. Defendant's inappropriate touching of Z became more insistent and more frequent after that disclosure. Defendant told Z that he would be able to tell if she was pregnant if she showed him her breasts and, on more than one occasion, asked Z to show him her breasts, which she never did. On multiple occasions, defendant told Z that he wanted to "lay down with" her, using a Spanish phrase with a specifically sexual connotation. Defendant told her that, now that she was not a virgin, she could "handle it." He once asked her to perform oral sex on him. He also told her that if she did not "do things with him," he would "go after" her family or boyfriend. More than once, defendant showed Z pornography on his cell phone. When Z told her mother about some of defendant's conduct, Z's mother told Z to let him do it.

The incident that led to defendant's convictions occurred in early 2016. Defendant entered Z's bedroom, locked the door, grabbed her, and tried to force himself on her. As Z tried to get away, defendant had his arm around both her arms, and he touched her buttocks over her clothing. He whispered in Spanish that he wanted to "lay down with" her. He kissed her neck. He whispered into her ear in Spanish, "You turn me on." The incident lasted about a minute. Z fought back by scratching at defendant's forehead with her fingernails until he stopped and left the room. The incident affected Z in several ways. It caused her to have difficulty sleeping, frequent nightmares, trouble communicating with her male teachers and male peers, and anxiety

attacks when male teachers approached her at school. Z felt that she would never forget what defendant did to her and that she could never forgive him.

Defendant was indicted on multiple counts. He waived jury and was tried to the court. The trial court convicted defendant of one count of first-degree sexual abuse and one count of third-degree sexual abuse, sentenced him as previously described on the first-degree count, and sentenced him to probation on the third-degree count.

## ANALYSIS

The state challenges the trial court's imposition of an 18-month prison sentence for defendant's first-degree sexual abuse conviction, rather than the 75-month sentence required by Measure 11. In the state's view, imposing a 75-month prison sentence would not violate Article I, section 16, and the trial court was therefore required to impose it. We review the trial court's decision for legal error. *State v. Conrad*, 280 Or App 325, 333, 381 P3d 880 (2016), *rev den*, 360 Or 851 (2017).

Under Measure 11, the mandatory minimum prison sentence for first-degree sexual abuse is 75 months. ORS 137.700(2)(a)(Q).[1] Trial courts have "no discretion to impose a lesser sentence based on the specific facts of the case, harm to the victim, or characteristics of the defendant." *State v. Rodriguez/Buck*, 347 Or 46, 52, 217 P3d 659 (2009).[2] As a practical matter, trial courts also have no discretion to impose a greater sentence. *Id.* at 72-73 (explaining why a 75-month prison sentence is both "the minimum and the maximum sentence for first-degree sexual abuse" under Measure 11). Under Measure 11, every act of first-degree sexual abuse is subject to the same 75-month

_____

[1] The statute's subsections were renumbered after the events in this case. As the renumbering is immaterial for our purposes, we cite the current version of the statute.

[2] By contrast, "before the passage of Measure 11, a person convicted of first-degree sexual abuse would have received a guidelines sentence that took into account criminal history and other aggravating or mitigating circumstances." *Rodriguez/Buck*, 347 Or at 52 n 3. "The presumptive guidelines sentence for a defendant with no prior convictions would have been 16 to 18 months in prison." *Id.*

sentence, with one narrow statutory exception not applicable here.[3]

Notwithstanding the lack of discretion in Measure 11 sentencing, trial courts must consider claims that a particular sentence is unconstitutional as applied in a particular case. *Id.* at 52. Article I, section 16, provides that "[c]ruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense." If the mandatory sentence would violate Article I, section 16, a court may impose a lesser sentence, not as a matter of discretion but to avoid a constitutional violation. *Id.* at 57.

A punishment violates Article I, section 16, only if it is so disproportionate to the offense as to "shock the moral sense" of reasonable people. *Id.* at 57-58. It is not the role of the courts to establish penalties for violations of criminal statutes; that is the province of the legislature and of the people acting through the initiative process. *State v. Allen*, 294 Or App 301, 312, 432 P3d 250 (2018). As such, in applying the protections of Article I, section 16, courts are not to "second-guess" the penalties chosen by the legislature or the people. *See Rodriguez/Buck*, 347 Or at 58. It is "only in rare circumstances" that a statutory penalty will be deemed so disproportionate as to violate Article I, section 16. *Id.* At least three factors bear on whether a punishment is so disproportionate that it would shock the moral sense of reasonable people: comparing the severity of the penalty and the gravity of the offense; comparing the penalties imposed for other, related crimes; and the criminal history of the defendant. *Id.*

In this case, we agree with the state that, although the mandatory sentence for defendant's crime may be somewhat harsh in these circumstances, it is not so disproportionate as to shock the moral sense of all reasonable people. That is, imposing a 75-month sentence for the crime

---

[3] As a statutory exception to the 75-month mandatory prison sentence for first-degree sexual abuse, a court may apply the sentencing guidelines (instead of Measure 11 sentencing) if the victim was 12 or 13 years old at the time of the offense, the defendant was no more than five years older than the victim, the victim's lack of consent was due solely to incapacity to consent by reason of age, the offense did not involve sexual contact with any other minor, and the defendant meets certain criminal-history criteria. ORS 137.712(2)(e).

of first-degree sexual abuse in this case—as required by Measure 11—would not rise to the level of an Article I, section 16, violation. It follows that the trial court erred by not imposing the mandatory minimum sentence.

We first compare the severity of the penalty and the gravity of the offense, which is a "difficult, but * * * not impossible" task. *Id.* at 63. The severity of the penalty here is 75 months' imprisonment. *See id.* at 60 (length of imprisonment is "the primary determinant of the severity of a penalty"). As for the gravity of the offense, relevant factors include the general definition of the crime, the specific circumstances and facts of defendant's conduct, characteristics of defendant and the victim, the harm to the victim, the relationship between defendant and the victim, and other case-specific factors. *Id.* at 62.

"An as-applied proportionality analysis that considers the facts of an individual defendant's specific criminal conduct is particularly significant when the criminal statute at issue covers a broad range of activity, criminalizing a variety of forms and intensity of conduct." *Id.* at 61. First-degree sexual abuse encompasses a broad range of activity. It is first-degree sexual abuse (1) to subject another person to "sexual contact" if that person is less than 14 years of age, is subjected to forcible compulsion by the actor, or is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless; or (2) to intentionally cause a person under 18 years of age to touch or contact the mouth, anus, or sex organs of an animal for the purpose of arousing or gratifying the sexual desire of a person. ORS 163.427. "Sexual contact" includes "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6).

At one end of the spectrum of first-degree sexual abuse are cases like *State v. Padilla*, in which the defendant rubbed his bare penis against the 11-year-old victim's hand, clothed genital area, and clothed buttocks. 277 Or App 440, 441, 446, 371 P3d 1242, *rev den*, 360 Or 401 (2016) (describing that conduct as "on the serious end" of the spectrum of

first-degree sexual abuse). At the other end are cases like *Rodriguez/Buck*, in which one defendant pressed the back of a 13-year-old boy's head against her clothed breasts for about a minute while they were standing in a room with 30 to 50 other people, and the other defendant failed to move his hand away when a 13-year-old girl leaned her clothed buttocks against it two or three times while they were out fishing and, later, used his hand to brush dirt off the back of the girl's shorts. 347 Or at 49, 75 (describing such conduct as being at the "outer edge" of first-degree sexual abuse).

Other cases fall in between. In *State v. Camacho-Garcia*, the defendant twice touched the 12- or 13-year-old victim's breasts, once over her clothing while commenting on her physical development and once under her clothing while making a sexually suggestive remark. 268 Or App 75, 82-83, 341 P3d 888 (2014), *rev den*, 357 Or 164 (2015) (describing that conduct as graver than that in *Rodriguez/Buck*). And, in *State v. Sills*, the defendant grabbed the clothed breast of a 13-year-old girl for several seconds, as she and her friends passed him on the street. 260 Or App 384, 386-87, 400, 317 P3d 307 (2013), *rev den*, 355 Or 380 (2014) (describing the defendant's "forceful conduct in grabbing the victim's breast on the street" as more serious than the conduct in *Rodriguez/Buck*).

In all of the foregoing cases, except *Rodriguez/Buck*, a 75-month sentence for first-degree sexual abuse was held not disproportionate under Article I, section 16.

In this case, defendant locked the 14-year-old victim's bedroom door, physically restrained her arms, and grabbed her clothed buttocks while kissing her neck and telling her that he wanted to "lay down with" her in a sexual way and that she turned him on. That conduct is less grave than the conduct in *Padilla*, in that it did not involve skin-to-skin contact with genitalia—although we note that it is unknown what would have happened if Z had not successfully fought off defendant by scratching at his face. It is graver than the conduct in *Rodriguez/Buck*, however, because it involved the use of physical force (forcible compulsion). *See Rodriguez/Buck*, 347 Or at 71 (describing the

difference between offenses involving forcible compulsion and the defendants' offenses as "obvious to any reasonable person"); *see also Padilla*, 277 Or App at 446 (treating the defendant's use of physical force to compel the victim's hand to make sexual contact with his penis as a relevant factor).[4] It is also graver than the conduct in *Rodriguez/Buck* because of the groping nature of the conduct and defendant's unambiguous sexual intent. *See Rodriguez/Buck*, 347 Or at 70 (distinguishing "fondling, stroking, rubbing, or palpating" from more passive touching); *Camacho-Garcia*, 268 Or at 82 ("The touching was also preceded by a sexually suggestive remark—and thus was unlikely to have been perceived by the victim as inadvertent."). And it is graver than the conduct in *Sills*, 260 Or App at 386-87, because defendant attempted to force himself on Z to a greater degree and as part of a larger pattern of inappropriate touching, conduct, comments, and threats.

Defendant's relationship with the victim and the harm that she suffered also increased the gravity of the offense. Defendant lived in the victim's home, was romantically involved with her mother, was four decades older than her, and was a *de facto* stepfather to her. *See Camacho-Garcia*, 268 Or at 82-83 (the fact that the defendant lived in the victim's home and was her *de facto* stepfather made the offense graver, because he breached a trust relationship; his sexual contact with the victim was "more likely to be psychologically damaging because it was repeated and because of the parties' relationship"). We agree with defendant that a parent-like relationship is not dispositive; however, it is relevant. The victim also was significantly traumatized by the event, including losing sleep, having nightmares, and fearing male teachers and male peers. *See State v. Sokell*, 273 Or App 654, 657, 362 P3d 251 (2015), *aff'd*, 360 Or 392, 380 P3d 975 (2016) (considering trauma to the victim as relevant to gravity of the offense).

---

[4] Defendant views the state as arguing that the use of forcible compulsion is, in and of itself, dispositive. We understand the state's position on appeal to be somewhat less stark. In any event, we do not consider that one fact to be dispositive. Every case in which a mandatory sentence is challenged as unconstitutional as applied must be decided on the totality of the facts regarding the particular defendant, the particular victim, and the particular offense.

On the whole, comparing the severity of the penalty to the gravity of the offense, there is no question that 75 months in prison is a harsh penalty for touching a person's clothed buttocks. However, in full context, the gravity of defendant's offense falls much closer to the middle of the spectrum than it does to the "outer edge" of conduct represented by *Rodriguez/Buck*.

We next consider the penalties imposed for other, related crimes. If more severe crimes carry less severe sentences, that may be an indicator of disproportionality, particularly when considering "the penalties imposed for other crimes that have similar characteristics to the crime at issue." *Rodriguez/Buck,* 347 Or at 63, 65. Here, as the state points out, there are certainly some more serious sexual crimes subject to more severe penalties, such as first-degree rape, first-degree sodomy, and first-degree unlawful sexual penetration, all of which carry mandatory minimum prison sentences of 100 months. *See* ORS 137.700(2)(a)(K), (M), (O). However, as the trial court emphasized, there are also more serious sexual crimes subject to the same 75-month penalty, including second-degree rape, second-degree sodomy, and second-degree sexual penetration. ORS 137.700(2)(a)(L), (N), (P); *see Rodriguez/Buck*, 347 Or at 75 (considering relevant that the defendants would have received the same 75-month sentence for anal sodomy, sexual intercourse, or sexual penetration of their victims).

In concluding that it would be constitutionally disproportionate to impose a 75-month sentence on defendant in this case, the trial court relied heavily on the fact that the same sentence would apply if defendant had subjected Z to skin-to-skin contact with genitalia, had committed second-degree rape of Z, or had committed second-degree sodomy of Z. We agree with the state that the trial court put too much weight on the fact that the same 75-month mandatory sentence applies to worse sexual offenses.

Our precedent establishes that, unless a defendant's conduct falls at the "outer edge" of what constitutes first-degree sexual abuse, the fact that worse conduct would be subject to the same mandatory sentence is not enough to make a 75-month sentence constitutionally

disproportionate. *See, e.g.*, *State v. Buckendahl*, 308 Or App 125, 129-30, 480 P3d 325 (2020); *Padilla*, 277 Or App at 447; *Camacho-Garcia*, 268 Or App at 83; *Sills*, 260 Or App at 400. Indeed, given the breadth of sexual offenses subject to mandatory 75-month sentences under Measure 11, to conclude otherwise would make it more of the rule than the exception for such sentences to be deemed constitutionally disproportionate. *See Rodriguez/Buck*, 347 Or at 58 (disproportionality under Article I, section 16, is "rare"). In requiring 75-month mandatory sentences for a fairly broad range of sexual offenses, including nearly all acts of first-degree sexual abuse, the voters who enacted Measure 11 evinced their intent that courts not be allowed to fine-tune prison sentences to the particular offense. Measure 11 functions more like a bludgeon than a scalpel, but that is the intention of the voters, and Article I, section 16, cannot be used to change it. Rather, Article I, section 16, protects only against disproportionality in its most extreme form, where a sentence is so disproportionate that it would shock the moral sense of reasonable people. As such, the fact that more serious conduct than defendant's would also be subject to a 75-month mandatory sentence weighs somewhat in defendant's favor, but it does not carry nearly as much weight as the trial court gave it.

That brings us to defendant's criminal history. Prior criminal convictions may demonstrate that previously imposed sentences have not deterred a defendant from returning to criminal behavior. *Id*. at 66; *see also Sills*, 260 Or App at 399-400 (relying in part on the defendant's prior convictions for sexual offenses in holding that 75-month sentence was not disproportionate). Instances of uncharged wrongful conduct may also be relevant. *Rodriguez/Buck*, 347 Or at 78 (stating same, and noting that first-degree sexual abuse cases commonly involve contact that "has occurred multiple times," whereas, in both *Rodriguez* and *Buck,* the "brief touching occurred on a single occasion").[5] At the same

---

[5] Defendant argues that, as part of considering his "criminal history," the trial court could have considered factors such as defendant's "advanced age," years of employment, and status as a lawful permanent resident, all of which, in his view, weigh in favor of disproportionality. Defendant provides no authority for the court to consider those factors, and we are aware of none.

time, a lack of prior convictions alone has never been found to be enough to render an otherwise constitutional penalty disproportionate. *State v. Shaw*, 233 Or App 427, 439, 255 P3d 855, *rev den*, 348 Or 415 (2010) ("Although criminal history is one factor that could, along with the other factors, demonstrate that a penalty is disproportionate under the circumstances, the lack of prior convictions alone has never been sufficient to render an otherwise constitutional penalty disproportionate under Article I, section 16.").

In this case, defendant has no prior criminal convictions. However, there is evidence that he engaged in multiple acts of uncharged wrongful conduct toward Z, including touching Z's buttocks more than 10 times, showing Z pornography more than once, making sexual comments to Z, and threatening to harm Z's family and boyfriend if she did not do as he wished. Under the circumstances, defendant's lack of prior convictions does not make the mandatory 75-month sentence unconstitutional as applied. *Cf. Padilla*, 277 Or App at 447 (concluding that, on the particular facts, the defendant having no prior convictions did "not lead to a conclusion that his sentence would shock the moral senses of reasonable people"); *Camacho-Garcia*, 268 Or at 83-84 (where the defendant had engaged in two instances of escalating conduct that constituted sexual abuse, his lack of prior convictions did "not alter our conclusion").

In sum, we agree with the state that, given existing precedent and all of the relevant considerations, sentencing defendant to 75 months in prison for his act of first-degree sexual abuse against Z is not a sentence that would shock the moral sense of reasonable people. A sentence may be harsh without being unconstitutionally disproportionate, and that is the case here. We also reject defendant's suggestion that we should "defer to the circuit court's judgment about the relative weight of the facts by affirming the prison sentence that it imposed." Such an approach would be contrary to the standard of review. We rely on the facts as found by the trial court, but the question whether a mandatory minimum sentence would violate Article I, section 16, as applied in the particular case is a question of law. *Conrad*, 280 Or App at 333. We cannot simply "defer" to the trial court's conclusion.

For the reasons discussed, the 75-month prison sentence required by Measure 11 would not violate Article I, section 16, and the trial court therefore was required to impose it and erred in imposing a lesser prison term.

In A167432, reversed and remanded for resentencing; otherwise affirmed. In A167449, appeal dismissed as moot.