Submitted April 13, 2011; vacated and remanded for resentencing; otherwise affirmed 15, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUSTIN TROY WILSON,
*Defendant-Appellant.*

Malheur County Circuit Court
08081594C; A144113

259 P3d 1004

Garrett A. Richardson and Multnomah Defenders, Inc., filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant was convicted of one count of first-degree sexual abuse, ORS 163.427(1)(a)(A), and received a sentence of 75 months as prescribed by ORS 137.700(2)(a)(P) (Measure 11). Defendant's entire defense rested on the assertion that he could not appreciate the criminality of his conduct and that he was not competent to stand trial. The court rejected that contention. At sentencing, the court announced that it was "very troubled" by the need to impose the 75-month sentence, but stated that it lacked the discretion to do anything else. Defendant now appeals his sentence, arguing that, in assessing whether the sentence violated Article I, section 16, of the Oregon Constitution,[1] the trial court erroneously believed that it could not take into consideration defendant's mental capacity. We have reviewed the court's statement, and we are unable to discern whether it did or did not subscribe to that erroneous belief and, if so, whether that belief determined the sentencing decision. We therefore remand for clarification.

Defendant, who was 19 years of age when the offense occurred, had lived with the victim, a 4-year-old girl, and her family for a number of years. He and the victim were close; the family, including the victim, considered him to be like a brother to her. He therefore occupied a position of trust and responsibility, and he often babysat the victim. At trial, defendant stipulated that he "put[ ] his hand inside the underwear of the [victim] and touch[ed] her vaginal area with his fingers." Sometime after the incident, defendant told the victim that the contact was "ok" because he was her brother and told her not to tell her parents. Her parents later found out when the victim attempted to verify with her mother whether it was in fact "ok" for defendant to touch her. Defendant was later charged with first-degree sexual abuse.

The trial court, as noted above, found that defendant appreciated the criminality of his conduct:

---

[1] Article I, section 16, of the Oregon Constitution provides, in part, "Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

"He is verbally very expressive that sexual conduct between a child and an adult is wrong. He was the victim of sexual abuse as a child himself and expressed and demonstrated remorse for his actions. His conduct in advising the child that the conduct was 'ok' and not to tell indicates an awareness that the conduct was wrong and that, if discovered, would result in consequences for [him]."

Consequently, the court found defendant guilty of first-degree sexual abuse.

At sentencing, defendant argued that the Supreme Court in *State v. Rodriguez/Buck*, 347 Or 46, 217 P3d 659 (2009), required that the court take into account defendant's diminished capacity in determining whether a 75-month sentence was proportionally constitutional. The state argued that *Rodriguez/Buck* did not allow for the court to take into account defendant's mental capacity and that defendant's conduct was egregious and warranted the 75-month sentence. Eventually, the court agreed with the state:

"I guess I have to separate my own reluctance to see someone with this kind of problem go to prison because of the difficulties I know he's going to have * * * whether this falls under the very narrow exception that I see has been carved out by *Buck* and *Rodriguez*.

"And the problem here is that this is a pretty straightforward example of exactly what kind of conduct that the legislature intended to prohibit. It's skin-to-skin touching on the vagina with a 4-year-old child, a very young child. There was a trust relationship. The child viewed him as her brother. And * * * really [the] * * * only thing that distinguishes this in any possible way is the defendant's diminished capacity, which I've already found wasn't sufficient enough to raise a mental defense. And as counsel for the state points out, it really wasn't a factor in either *Buck* or *Rodriguez*, which are the first cases we've ever had where they've taken * * * cases out of Measure 11.

"Unfortunately the language that counsel for the defense, about the characteristics of the victim and the offender, I read that as being—as discussing the kind of situation where there's some kind of relationship between them where it may be inappropriate. For example, you know, 19-year-olds with 13-year-olds, where there's consent and things like that. So I just don't know how much I

can take into account this defendant's limitations for this purpose.

"Again, though, I'm reluctant to send him because I know he's going to have a lot of difficulty. But I don't see that I've got any discretion here. So, again, I'm reluctant—I reluctantly agree with the state; this just doesn't fall under this very narrow exception so I guess I've got no choice."

Accordingly, the court imposed the 75-month sentence. This appeal followed.

Defendant argues that the trial court erred in not taking into account his diminished mental capacity. On appeal, the state agrees with defendant that the trial court can take that fact into consideration, but it argues instead that the trial court *did* so.

We agree with the parties that the trial court can take into account a defendant's mental capacity when determining whether a Measure 11 sentence violates Article I, section 16. In *Rodriguez/Buck*, the court concluded that imposing a mandatory 75-month prison term on a first-degree sexual abuse conviction, pursuant to Measure 11, would be unconstitutional as applied to those particular defendants— individuals with no criminal history whose sexual contact with the victims was "minimal" and "brief." 347 Or at 70. In reaching that conclusion, the court clarified the proper approach to a proportionality analysis under Article I, section 16. *Id.* at 56-67. The court adhered to the traditional proportionality test—that is, whether imposition of the sentence would shock the moral sense of reasonable people—and identified "at least three factors" that bear upon that "ultimate conclusion": "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." *Id.* at 58.

Regarding the first factor, the court explained,

"In considering a defendant's claim that a penalty is constitutionally disproportionate as applied to that defendant * * * a court may consider, among other things, the specific circumstances and facts of the defendant's conduct that come within the statutory definition of the offense, as well as other *case-specific factors*, such as *characteristics of the*

*defendant* and the victim, the harm to the victim, and the relationship between the defendant and the victim."

*Id.* at 62 (emphasis added). The trial court, however, believed that the italicized language above refers to "the kind of situation where there's some kind of relationship between [the offender and the victim] where it may be inappropriate." That consideration, however, is captured in the subsequent phrase, "the relationship between the defendant and the victim." Characteristics of either the defendant or the victim, or both, may be considered, and if the trial court believed otherwise, that was legal error.

In arguing that the court did make that error, defendant focuses on the following statement:

"Unfortunately the language that counsel for the defense, about the characteristics of the victim and the offender, I read that as being—as discussing the kind of situation where there's some kind of relationship between them where it may be inappropriate. For example, you know, 19-year-olds with 13-year-olds, where there's consent and things like that."

The state argues that the court's sentencing decision was based on a proper focus on several facts that distinguish this offense from the ones at issue in *Buck* and *Rodriguez*: there was "skin-to-skin touching on the vagina with a 4-year-old child"; "[t]here was a trust relationship" between the defendant and the victim; and defendant's diminished capacity was insufficient to render him incapable of appreciating the criminality of his conduct.

We could parse the court's statement in an attempt to discern whether defendant or the state correctly characterizes it, but we decline to do so for two reasons. First, to do so would be to presume that the court's oral colloquy with defendant was intended to be a definitive and carefully reasoned explanation for its decision. In fact, it more closely resembles the thinking out loud of a judge struggling with a troubling and difficult decision that is not susceptible to (nor intended to be subjected to) the kind of analysis that we apply to statutes or written judicial opinions. Second, there is no need for us to engage in an exercise that, in the final analysis, would result only in an interpretation of ambiguous language, when

we can remand the case for a more authoritative disambiguation.[2]

Vacated and remanded for resentencing; otherwise affirmed.

---

[2] This opinion should not be taken to imply that the proper consideration of defendant's mental capacity would necessarily lead to a different sentence, nor to imply that such a sentence would or would not be a violation of Article I, section 16. That is a decision, in the first instance, for the trial court.