Argued and submitted January 22, 2013, sentence vacated and remanded for resentencing; otherwise affirmed March 26, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RENE ANTONIO RIVERA,
*Defendant-Appellant.*

Marion County Circuit Court
07C41580; A147582

322 P3d 1125

Bear Wilner-Nugent argued the cause and filed the briefs for appellant.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Wollheim, Presiding Judge, and Nakamoto, Judge, and Schuman, Senior Judge.*

WOLLHEIM, P. J.

---

* Nakamoto, J., *vice* Duncan, J.

## WOLLHEIM, P. J.

A jury found defendant guilty of first-degree rape, ORS 163.375(1)(a), for raping his wife by forcible compulsion. Defendant received a mandatory 100-month prison sentence for his crime. ORS 137.700(2)(a)(J) (setting a mandatory minimum sentence of 100 months' imprisonment for first-degree rape under ORS 163.375(1)(a)). On appeal, defendant urges us to remand for resentencing because the trial court did not have the benefit of the Supreme Court's opinion in *State v. Rodriguez/Buck*, 347 Or 46, 217 P3d 659 (2009), which clarified the test for assessing the proportionality of a sentence for purposes of Article I, section 16, of the Oregon Constitution. We agree with defendant that the trial court should be allowed to reconsider its decision—including making any necessary factual findings—with regard to the proportionality of defendant's sentence. We therefore vacate the sentence and remand for resentencing.

In early 2007, the victim, defendant's wife, called the police to report that defendant had raped her. The police investigated the report, including interviewing defendant. According to the interviewing detectives, defendant essentially admitted that he had physically forced the victim to have sexual intercourse with him and believed that it was his "right" to have sex with her. Defendant was subsequently charged with first-degree rape under ORS 163.375(1)(a), which makes it a crime to have sexual intercourse with a person by "forcible compulsion."

At trial, the victim testified that she and defendant were in bed together when defendant climbed on top of her. She told defendant that she did not want to have sex, and defendant then accused her of having an affair with someone else and threatened to kill her if that were the case. Defendant grabbed the victim's arms and forced them above her head; she struggled to fight defendant off but was unable to do so. She testified that defendant "[w]as using force when he inserted his penis," that she was crying, and that it hurt "[a] little bit."

Defendant also testified at trial. He denied that he had ever forced the victim to have sexual intercourse with

him, and further denied telling the investigating officers that it was his right to have intercourse with his wife.

The jury found defendant guilty of first-degree rape, and the case proceeded to sentencing. Under Ballot Measure 11 (1994), codified at ORS 137.700 to ORS 137.707, the offense of first-degree rape carries a mandatory minimum sentence of 100 months in prison. ORS 137.700(2)(a)(J). At the sentencing hearing, which occurred in 2007, defendant's counsel argued against the imposition of that Measure 11 sentence:

> "Your Honor, objecting to a mandatory Measure 11 sentence is pretty much just for purposes of hearing my own voice, I think, but I will make the objection. I think as it is imposed in this case, it is cruel and unusual. It does not fit the facts as proposed. For instance, in a similar—the charge could have been the same if this were stranger to stranger, if he had simply accosted somebody in the park that he had never known, and those people would be similarly situated according to the implementation of Measure 11 under the circumstances.
>
> "I object to Measure 11 generally simply because it removes all discretion from the Court in consideration of the specific circumstances of each individual as situated before the Court and destroys that discretion. But, as I indicated, there's really nothing much else we can say about it."

The trial court next gave defendant himself an opportunity to speak, and defendant again professed his innocence. At that point, the trial court indicated that it was sympathetic to defendant's argument but was legally bound to impose a Measure 11 sentence:

> "The problem is the way the statute's written, based on something that was passed by the people of the State of Oregon, there's a mandatory 100-month sentence that you have to serve when you're convicted of this crime. And the jury convicted you of the crime, so that's the sentence. I will say that I find that this is a—under Article I, section 16, I think that this is disproportionate based on what you did versus all the other crimes that are covered in this category.
>
> "* * * * *
>
> "I don't have any discretion, but I would never have given you this 100-month sentence absent Measure 11. But

I don't have a choice right now. I've made a record. If the Court of Appeals wants to look at it in this case, feel free. And the Appellate Courts have never overturned any. The Federal Court hasn't either. But I do think it's a disproportionate sentence under the Federal and State Constitution. But we'll see what the Courts say about that.

"So at this point I'm not in a position to overturn it, so I will impose the mandatory sentence. And you'll have those issues to raise on appeal."

The court then entered a judgment sentencing defendant to 100 months' imprisonment.

On appeal, defendant argues that, in light of the Supreme Court's 2009 opinion in *Rodriguez/Buck*—which was decided well after the 2007 sentencing in this case[1]— it is apparent that defendant's trial counsel and the trial court felt unduly constrained by Measure 11. According to defendant, *Rodriguez/Buck* held that "the imposition of a sub-Measure 11 sentence may be appropriate in certain cases to avoid results that would 'shock the moral sense' of reasonable people and thus violate the Oregon Constitution's ban on disproportionate sentences." Here, defendant contends, "the trial court found that the imposition of a Measure 11 sentence was indeed unconstitutionally disproportionate, but because the trial court believed it lacked the discretion to impose any lesser sentence it imposed the Measure 11 sentence anyway. This erroneous decision entitles defendant to resentencing." Defendant further argues that he is entitled to supplement the record with additional facts consistent with his challenge to the proportionality of the Measure 11 sentence in light of the *Rodriguez/Buck* decision and to present new arguments to the sentencing court based on a full record. Defendant relies on *State v. Wilson*, 243 Or App 464, 259 P3d 1004 (2011), in which we remanded for the trial court to reconsider the proportionality of a Measure 11 sentence under the principles articulated in *Rodriguez/Buck*.

---

[1] Defendant was convicted and sentenced in 2007, and he timely appealed. Despite the trial court's effort to frame the issue for appeal, defendant's original appellate counsel did not challenge the constitutionality of his sentence. In 2010, a post-conviction court concluded that defendant's appellate counsel had been constitutionally inadequate in failing to raise that issue, thereby giving defendant this subsequent opportunity to raise the constitutionality of his sentence on appeal.

The state opposes a remand. In its view, the proportionality of defendant's sentence poses a pure question of law. The state argues that there are no remaining factual questions for the sentencing court (as there were in *Wilson*) and urges us to consider—and reject—defendant's proportionality argument based on the record before us.

Under Article I, section 16, "all penalties shall be proportioned to the offense." The proportionality of a penalty is evaluated by whether the imposition of the sentence "would shock the moral sense of reasonable people." *State v. Wheeler*, 343 Or 652, 670-71, 175 P3d 438 (2007) (synthesizing the court's earlier case law concerning the proportionality provision of Article I, section 16). In *Rodriguez/Buck*, the court "clarified" the application of that proportionality test by identifying " 'at least three factors' " that "bear upon the 'ultimate conclusion' whether a sentence would shock the moral sense of reasonable people." *State v. Alwinger*, 236 Or App 240, 243, 236 P3d 755 (2010) (quoting *Rodriguez/Buck*, 347 Or at 57-58). Those three factors are "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." *Rodriguez/Buck*, 347 Or at 58. The Supreme Court, after considering the factors, affirmed the trial courts' departure sentences from the Measure 11 mandatory minimum sentences. *Id.* at 80.

The parties focus on *Wilson*, a post-*Rodriguez/Buck* case, in which we elected to remand for the trial court to assess proportionality in the first instance. In *Wilson*, the defendant had been convicted, after a bench trial, of first-degree sexual abuse. The defense theory had been that the defendant was not competent to stand trial and was unable to appreciate the criminality of his conduct. At sentencing, the defendant had argued that, under *Rodriguez/Buck*, his Measure 11 sentence was unconstitutionally disproportionate because of his diminished mental capacity; the state had responded that the court was not permitted to consider that characteristic of the defendant. The court imposed the Measure 11 sentence over the defendant's objection.

On appeal, the state conceded that its position at trial regarding the defendant's mental capacity had been incorrect, and we accepted that concession:

"We agree with the parties that the trial court can take into account a defendant's mental capacity when determining whether a Measure 11 sentence violates Article I, section 16. * * *

"* * * * *

"Regarding the first factor [a comparison of the severity of the penalty and the gravity of the crime], the court [in *Rodriguez/Buck*] explained,

"'In considering a defendant's claim that a penalty is constitutionally disproportionate as applied to that defendant * * * a court may consider, among other things, the specific circumstances and facts of the defendant's conduct that come within the statutory definition of the offense, as well as other *case-specific factors*, such as *characteristics of the defendant* and the victim, the harm to the victim, and the relationship between the defendant and the victim.'

"*Id.* at 62 (emphasis added). The trial court, however, believed that the italicized language above refers to 'the kind of situation where there's some kind of relationship between [the offender and the victim] where it may be inappropriate.' That consideration, however, is captured in the subsequent phrase, 'the relationship between the defendant and the victim.' Characteristics of either the defendant or the victim, or both, may be considered, and if the trial court believed otherwise, that was legal error."

*Wilson*, 243 Or App at 468-69.

Although some of the trial court's remarks at sentencing suggested that it had adopted the state's overly narrow view of *Rodriguez/Buck*, the state did not concede as much. The state instead contended that, notwithstanding its arguments, the trial court had applied the law correctly and considered defendant's mental capacity as a factor in the proportionality analysis. We declined to resolve that question on appeal, choosing to remand. We explained:

"We could parse the court's statement in an attempt to discern whether defendant or the state correctly characterizes it, but we decline to do so for two reasons. First, to do

so would be to presume that the court's oral colloquy with defendant was intended to be a definitive and carefully reasoned explanation for its decision. In fact, it more closely resembles the thinking out loud of a judge struggling with a troubling and difficult decision that is not susceptible to (nor intended to be subjected to) the kind of analysis that we apply to statutes or written judicial opinions. Second, there is no need for us to engage in an exercise that, in the final analysis, would result only in an interpretation of ambiguous language, when we can remand the case for a more authoritative disambiguation."

*Wilson*, 243 Or App at 469-70. We added, by way of a footnote, this caveat:

"This opinion should not be taken to imply that the proper consideration of defendant's mental capacity would necessarily lead to a different sentence, nor to imply that such a sentence would or would not be a violation of Article I, section 16. That is a decision, in the first instance, for the trial court."

*Id*. at 470 n 2.

This case presents the same prudential concerns as *Wilson*. Here, the trial court concluded that it was bound to impose a Measure 11 sentence even though it believed that "it's a disproportionate sentence under the Federal and State Constitution." Without the benefit of *Rodriguez/Buck*, the trial court identified certain factors that, in its view, rendered the sentence unconstitutional, including that "this is disproportionate based on what you did versus all the other crimes that are covered in this category"; that there was no physical injury; and that the parties had an existing relationship. But, just as in *Wilson*, it is not clear whether the court's "oral colloquy with defendant was intended to be a definitive and carefully reasoned explanation for its decision," or whether it was instead "the thinking out loud of a judge struggling with a troubling and difficult decision that is not susceptible to (nor intended to be subjected to) the kind of analysis that we apply to statutes or written judicial opinions." 243 Or App at 469. For purposes of reviewing the court's ruling, we could speculate as to whether the court properly considered the relevant case-specific factors and

made any necessary factual findings, but, as in *Wilson*, "there is no need for us to engage in an exercise that, in the final analysis, would result only in an interpretation of ambiguous language, when we can remand the case for a more authoritative disambiguation." *Id.* at 469-70. Accordingly, we remand for the trial court to resentence defendant with the benefit of the Supreme Court's decision in *Rodriguez/Buck*.[2]

The state acknowledges that, on remand, defendant will have the opportunity to submit additional evidence, and defendant argues that the parties would develop the record differently in two areas, because, had defendant's counsel believed that a realistic argument could be made, he could and would have focused on details of the crime and investigated and developed defendant-specific facts as permitted in *Rodriguez/Buck*.[3]

Sentence vacated and remanded for resentencing; otherwise affirmed.

---

[2] Since *Rodriguez/Buck*, we have addressed the merits of some proportionality challenges based on the record before us, rather than remanding for the trial court to consider the relevant factors in the first instance. *E.g., State v. Johnson*, 244 Or App 574, 583-85, 260 P3d 782 (2011) (applying, in the first instance, the factors identified in *Rodriguez/Buck* to determine whether the defendant's sentence was unconstitutionally disproportionate); *State v. Baker*, 233 Or App 536, 226 P3d 125, *rev den*, 348 Or 414 (2010) (same); *State v. Shaw*, 233 Or App 427, 225 P3d 855, *rev den*, 348 Or 415 (2010) (same); *Alwinger*, 236 Or App 240 (same). In none of those cases, however, did the defendant timely argue that we should remand based on the sentencing court's misapprehension of its authority.

[3] As we similarly noted in *Wilson*, 243 Or App at 469 n 2, this opinion should not be read to imply that a Measure 11 sentence would or would not be a violation of Article I, section 16, or be read as an endorsement of the factors that the court identified in 2007. Rather, our remand simply allows the trial court in the first instance to address the question of proportionality in light of *Rodriguez/Buck*.