Submitted February 25, 2015, affirmed August 24, 2016, petition for review denied February 2, 2017 (360 Or 851)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT BENJAMIN CONRAD,
*Defendant-Appellant.*

Washington County Circuit Court
C112697CR; A154218

381 P3d 880

Thomas W. Kohl, Judge.

Peter Gartlan, Chief Defender, and Neil F. Byl, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Andrew M. Lavin, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## ORTEGA, P. J.

Defendant appeals a judgment entered after a jury found him guilty of four counts of first-degree sexual abuse, ORS 163.427. On appeal, he challenges the trial court's merger of the guilty verdicts on Counts 1 and 2 "for sentencing purposes," the court's admission of video recordings of the victims' CARES interviews, and the court's imposition of a mandatory minimum sentence under ORS 137.707(2) of 75 months' imprisonment on Counts 1, 3, and 4. For the reasons that follow, we conclude that defendant's merger challenge is moot, that we have a sufficient basis to affirm the court's admission of the video recordings as being within the court's allowable discretion, and that defendant's challenge to his sentence is not well taken. Accordingly, we affirm.

Because the jury found defendant guilty, we state the relevant background facts in the light most favorable to the state. *State v. Washington*, 355 Or 612, 614, 330 P3d 596 (2014). Defendant, who was 15 to 16 years old at the time of his crimes, occasionally babysat the victims, A and N, who are sisters. A and N, who were both under the age of 13 at the time of defendant's crimes, reported to their mother that defendant had kissed them.

Their mother reported those allegations to the police, who took a report and told her to schedule an appointment with CARES for an evaluation. At CARES, both girls were interviewed by a staff member. During A's interview, she reported that defendant had kissed her, touched her breasts with his hands and mouth, and tried to touch her vagina. N reported similar abuse during her interview.

Defendant was indicted by a grand jury of four counts of first-degree sexual abuse for knowingly subjecting two children less than 14 years of age to sexual contact. Counts 1 and 2 related to his abuse of A, and Counts 3 and 4 related to his abuse of N. Prior to trial, defendant filed a motion *in limine* to exclude the video recordings of the CARES interviews. Defendant first argued that the evidence was prohibited because the videos contained "testimony" and ORS 136.420[1] restricts criminal trials to in-court testimony.

---

[1] ORS 136.420 provides, in relevant part: "In a criminal action, the testimony of a witness shall be given orally in the presence of the court and jury[.]"

Alternatively, defendant argued that the video interviews were "overly prejudicial versus [their] probative value" and should be excluded under OEC 403.[2] The court denied defendant's motion at a pretrial hearing.

At trial, both victims testified about defendant's abuse. At times, their testimony was consistent with their CARES interviews. However, the testimony of both victims at trial was also inconsistent with their CARES interviews in some ways. For purposes of our decision, a discussion of the consistencies and inconsistencies between the recorded interviews and trial testimony is unnecessary. Defendant testified in his defense that none of the abuse had occurred.

The jury returned a guilty verdict on all four counts. At sentencing, the state asked the trial court to impose a mandatory minimum sentence under ORS 137.707(2) of 75 months' imprisonment on each count. Defendant asserted that the statutory sentencing scheme was facially unconstitutional because it precluded the court from taking into account a juvenile defendant's age when sentencing a juvenile defendant to a mandatory minimum sentence. He also argued that a mandatory minimum sentence of 75 months' imprisonment under ORS 137.707(2) was unconstitutional as applied to him under the methodology set out in *State v. Rodriguez/Buck*, 347 Or 46, 217 P3d 659 (2009).

The court entered a judgment that merged Count 2 with Count 1 "for the purposes of sentencing" and sentenced defendant to 75 months' imprisonment on each of Counts 1, 3, and 4. The court imposed the 75 months' imprisonment on Counts 1 and 4 concurrently, and 25 months of the sentence on Count 3 consecutively to the sentence imposed on Count 1. Accordingly, defendant was sentenced to serve a minimum of 100 months' imprisonment without eligibility for a reduction in his sentence. Defendant appeals.

---

[2] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

In his first assignment of error, he asserts that, although the trial court merged his two guilty verdicts on Counts 1 and 2 "for the purposes of sentencing," the court erroneously failed to enter a single conviction on those merged verdicts. The state concedes that error, and, shortly after briefing was completed in this appeal, the trial court entered an amended judgment that merged the guilty verdicts into a single conviction and removed any reference to "for the purposes of sentencing." Accordingly, that assignment of error is moot, and we do not address it. *See Dept. of Human Services v. B. A.*, 263 Or App 675, 678, 330 P3d 47 (2014) ("A case is moot when it involves a matter that no longer is a controversy between the parties.").

In defendant's second assignment of error, he asserts, in two separate arguments, that the court erred by admitting into evidence the recordings of the victims' CARES interviews. Defendant's first argument is that ORS 136.420 required the court to exclude the videos because that statute restricts "testimony" in a criminal action to that presented in court by live witnesses. Defendant's reliance on ORS 136.420 is foreclosed by our decision in *State v. McMullin*, 269 Or App 859, 346 P3d 611, *rev den*, 357 Or 640 (2015). There, in the face of a challenge to the admission of a video-taped interview of a child victim, we explained that, because "ORS 136.420 has long been interpreted as a statutory confrontation right that is 'coextensive in scope' with Article I, section 11, of the Oregon Constitution[,] *** ORS 136.420 is not violated by the introduction into evidence of out-of-court statements, so long as a defendant's state constitutional confrontation rights are met." 269 Or App at 860-61. We held that the defendant's confrontation rights under Article I, section 11, were satisfied in *McMullin* "because the victim testified at trial and was subject to cross-examination." *Id.* at 861; *see also State v. Wixom*, 275 Or App 824, 842, 366 P3d 353 (2015), *rev den*, 359 Or 166 (2016) (same), and *State v. Rascon*, 269 Or App 844, 847-48, 346 P3d 601, *rev den*, 357 Or 596 (2015) (same). Similarly here, the two child victims testified at trial and were subject to cross-examination. It necessarily follows that defendant's state constitutional confrontation rights were satisfied in this case, and admission of the CARES videotapes did not violate ORS 136.420.

Defendant also challenges the admission of the CARES videotapes under OEC 403. Defendant first argues that the record does not reflect that the court conducted OEC 403 balancing according to the method established in *State v. Mayfield*, 302 Or 631, 733 P2d 438 (1987). The state asserts a contrary view.

In *Mayfield*, the court set out the following test:

"In making this decision under OEC 403, the judge should engage in four steps. First, the trial judge should assess the proponent's need for the uncharged misconduct evidence. In other words, the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence. In the second step the trial judge must determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime. The third step is the judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair prejudice, and the fourth step is for the judge to make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence."

302 Or at 645.

In conducting balancing under OEC 403, the court must "make a record which reflects an exercise of discretion." *Id.* That is so because we review a trial court's decision to admit evidence over an OEC 403 objection for an abuse of discretion, *State v. Brumwell*, 350 Or 93, 107, 249 P3d 965 (2011), *cert den*, ___ US ___, 132 S Ct 1028 (2012), and we need a sufficient record to conduct meaningful appellate review of that exercise of discretion. *See, e.g., State v. Meyers*, 132 Or App 585, 589, 889 P2d 374 (1995) (trial court established sufficient record for our review). In that vein, we have explained that *Mayfield* "is a matter of substance, not form or litany." *State v. Brown*, 272 Or App 424, 433, 355 P3d 216, *rev den*, 358 Or 145 (2015). Accordingly, a court's OEC 403 decision meets the requirements of *Mayfield* even if a trial court does not expressly follow the *Mayfield* analysis, as long as the "record establishes that, in deciding to admit [the evidence], the trial court considered the matters prescribed in *Mayfield*." *State v. Borck*, 230 Or App 619, 637, 216 P3d 915,

*adh'd to as modified on recons*, 232 Or App 266, 221 P3d 749 (2009), *rev den*, 348 Or 291 (2010). That is, we review whether the "totality of the attendant circumstances indicate that the court * * * engage[d] in the conscious process of balancing the costs of the evidence against its benefits that *Mayfield* requires." *Id.* at 638 (internal quotation marks omitted).

In this case, defendant filed a pretrial motion *in limine* to exclude the CARES recordings. In that motion, defendant asserted that the videos were of low probative value because they were not conducted under oath and the victims' answers were elicited by interviewers. He claimed that the "unreliable" videos were unfairly prejudicial because, by admitting them into evidence, the jury would have "the opportunity to view the video, as often as desired, without counsel or the court present, in the confines of the jury room." Accordingly, defendant's sole argument as to prejudice was that the jury would place undue emphasis on the "unreliable" videos. In a pretrial hearing to specifically address defendant's motion to exclude the videos, the court indicated that it had defendant's written motion before it and invited additional argument on the matter. In response, defendant asserted that the videos should be excluded under OEC 403—essentially relying on his written motion—and the state responded that the videos were "certainly not more prejudicial than probative." The court denied the motion by simply stating "So that motion is * * * denied."

We agree with the state that, given the totality of the attendant circumstances, the record reveals that the trial court, in denying defendant's OEC 403 motion, considered the matters prescribed in *Mayfield*. However, before we explain why the record here is sufficient, we pause to caution that although *Mayfield* is a "matter of substance, not form or litany," that "substance" is *best* expressed in the form set out in *Mayfield*. That is, given that we review a court's decision under OEC 403 for an abuse of discretion, we can conduct meaningful review only when we can tell that the court exercised its discretion and how it did so. That is the point of *Mayfield*. Obviously, the best way for the trial court to fulfill the "substance" of *Mayfield* is to articulate on the record,

in the manner set forth in *Mayfield*, how it is exercising its discretion. In many cases, the failure to do so will preclude meaningful appellate review, which, among other things, can severely frustrate judicial efficiency.

Nevertheless, this is the rare case where, despite a very thin record encompassing the trial court's decision to deny defendant's OEC 403 objection, we are satisfied that the court implicitly balanced the "costs of the evidence against its benefits" as is required by *Mayfield*. Here, the court was specifically tasked with resolving defendant's motion *in limine*, which explicitly set out the OEC 403 balancing issue, and given the limited scope of defendant's argument before the court (*i.e.*, that the probative value of the recordings was low and outweighed by the danger that the jury would view the videos during deliberations and give them undue emphasis), it is fair to conclude that the court understood the narrow question before it. Further, in denying the motion immediately after indicating that it had the written motion before it and asking for any additional argument on the motion, it is fair to conclude that the court implicitly balanced the "costs of the evidence against its benefits." *See Borck*, 230 Or App at 638. We also note that this is not a case in which the attendant circumstances could support the conclusion that the court determined that OEC 403 balancing was not required. *See, e.g.*, *State v. Mazziotti*, 276 Or App 773, 779, 369 P3d 1200 (2016) (concluding that reversal was required where the record would support the conclusion that the court decided that OEC 403 balancing was not required).

Defendant also asserts that, if the trial court engaged in OEC 403 balancing, it abused its discretion by permitting the state to introduce the CARES videos in this case. We have reviewed the videos and conclude that the trial court did not abuse its discretion in concluding that their probative value was not substantially outweighed by the danger of unfair prejudice or other considerations.

That leads to defendant's third, fourth, and fifth assignments of error challenging the court's imposition of a mandatory minimum sentence of 75 months' imprisonment

under ORS 137.707(2)[3] on Counts 1, 3, and 4, respectively. On appeal, defendant makes two arguments in those assignments.

First, he argues that we should vacate and remand his sentence because the trial court's sentencing decision does not explicitly reflect that the court considered his diminished mental capacity—on account of his age—as a factor when it addressed his argument that the mandatory minimum sentence under ORS 137.707(2) violated the requirement in Article I, section 16, of the Oregon Constitution that "all penalties be proportioned to the offense." He asserts that *Rodriguez/Buck* and *State v. Wilson*, 243 Or App 464, 469, 259 P3d 1004 (2011), recognized that a trial court must consider the diminished mental capacity of a defendant when considering whether a mandatory minimum sentence for first-degree sexual abuse violates proportionality under Article I, section 16. Here, defendant claims that the record is unclear whether the trial court did so, and argues that, under those circumstances, *Wilson* requires us to vacate his sentences and remand for resentencing. Defendant does not otherwise argue that, even if the court considered his age, the sentence he was given violates, as a matter of law, Article I, section 16.

To set the appropriate context, we briefly revisit *Rodriguez/Buck*. That case explained that when a court is evaluating whether a penalty, as applied to a particular defendant, is disproportionate under Article I, section 16, three factors bear on the analysis: "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." 347 Or at 58. The first factor includes consideration of, "among other things, * * * case-specific factors, such as characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim." *Id.* at 62. We review a trial court's decision under Article I, section 16, for legal error, *State v. Padilla*, 277 Or App 440,

---

[3] ORS 137.707 codifies the portion of Ballot Measure 11 (1995) that requires mandatory minimum sentences for defendants that are 15, 16, and 17 years of age convicted of certain crimes—including first-degree sexual abuse.

442, 371 P3d 1242 (2016), and we are bound by the trial court's findings of historical fact if supported by evidence in the record. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). In the absence of express findings, we ordinarily presume that the court resolved factual disputes consistently with its ultimate decision. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

In *Wilson*, the defendant appealed after the trial court explained at sentencing that it was "very troubled" by the need to impose a 75-month sentence for first-degree sexual abuse, but "stated that it lacked the discretion to do anything else." 243 Or App at 466. We noted that, under *Rodriguez/Buck*, the trial court "can take into account a defendant's mental capacity when determining whether a Measure 11 sentence violates Article I, section 16." 243 Or App at 468. We reviewed the trial court's on-the-record statements and concluded that they were ambiguous as to whether the trial court had concluded that it was prohibited from taking into consideration the defendant's diminished mental capacity in its proportionality analysis. Because of that ambiguity, we vacated the defendant's sentence and remanded for the trial court to resentence the defendant under a correct understanding of its authority. *Id.* at 469-70.

In our view, *Wilson* stands for the limited proposition that, in certain circumstances where a statement on the record suggests that the trial court misapprehended its authority in resolving a proportionality challenge, we may vacate and remand for the court to consider the relevant factors in the first instance. As we later explained in *State v. Rivera*, 261 Or App 657, 663-64, 322 P3d 1125 (2014), vacating and remanding for a trial court to resentence the defendant in those circumstances is appropriate because, given the ambiguity concerning the court's understanding of its authority, we would have to "speculate as to whether the court properly considered the relevant case-specific factors and made any necessary factual findings." *See also State v. Sanderlin*, 276 Or App 574, 576, 368 P3d 74 (2016) (vacating and remanding for resentencing because the trial court had concluded that it was not permitted to consider the

defendant's "mental problems" in assessing the proportionality of the sentence).

Accordingly, *Wilson* and *Rivera*, recognize that, when a trial court has misapprehended its authority under *Rodriguez/Buck*, a remand is necessary because the possibility that the trial court failed to consider and address necessary factual findings potentially undermines our ability to review the court's ultimate determination under Article I, section 16, for legal error.

This case presents no such problem. Here, the record does not include any affirmative indication that the court misunderstood the relevant factors it could consider in assessing whether the minimum mandatory sentence under ORS 137.707(2) would violate Article I, section 16. Defendant argued to the court that, given defendant's age at the time of the crimes, the mandatory 75-month sentence violated Article I, section 16, and the court sentenced defendant to the mandatory minimum without commenting on the record about defendant's age. In that circumstance, we do not treat the court's silence as an indication that it failed to make necessary factual findings; rather we presume, under *Ball*, that the court resolved any factual disputes consistently with its ultimate legal conclusion. In the absence of an indication that the court misapprehended its authority, we review the court's decision under Article I, section 16, on the record before us. Accordingly, we review the trial court's factual findings for sufficient evidence in the record, and then determine whether the court correctly applied legal principles to those facts. *State v. Johnson*, 244 Or App 574, 576, 260 P3d 782 (2011).

As noted, however, defendant does not argue that, as a matter of law, his sentence violates Article I, section 16. That is, his only argument is that, under *Wilson*, we must vacate and remand for resentencing. Because we conclude that this case is unlike *Wilson*, our analysis under Article I, section 16, is at an end.

Defendant's second argument in his third, fourth, and fifth assignments of error is a facial challenge to ORS 137.707(2) under the Eighth Amendment to the United

States Constitution's ban on "cruel and unusual punishment." To support his argument that a mandatory minimum sentence of 75 months' imprisonment for a juvenile offender under ORS 137.707(2) violates the Eighth Amendment, defendant relies on a series of United States Supreme Court decisions that have held to varying degrees that juveniles are constitutionally different from adults for sentencing purposes. In *Roper v. Simmons*, 543 US 551, 575, 125 S Ct 1183, 161 L Ed 2d 1 (2005), the Court concluded that the Eighth Amendment forbids the imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed. Later, in *Graham v. Florida*, 560 US 48, 82, 130 S Ct 2011, 176 L Ed 2d 825 (2010), the Court held that the Eighth Amendment prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. And most recently, in *Miller v. Alabama*, 567 US ___, ___, 132 S Ct 2455, 2469, 183 L Ed 2d 407 (2012), the Court declared that sentencing schemes that mandate life in prison without the possibility of parole for juvenile homicide offenders without allowing the sentencing court to consider the juvenile offender's age violate the Eighth Amendment. In doing so, the Court explained that an offending characteristic of such schemes is that they prevent the sentencing court from taking into account the defendant's status as a juvenile, noting that "'an offender's juvenile status can play a central role' in considering a sentence's proportionality." *Id*. at 2466 (quoting *Graham*, 560 US at 90). Accordingly, such a scheme "poses too great a risk of disproportionate punishment" "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence[.]"

In defendant's view, ORS 137.707(2), by requiring mandatory minimum sentences for certain juvenile offenders, does not allow the sentencing court to take into account the offender's age and other age-related characteristics, and therefore violates the Eighth Amendment. According to defendant, although the focus in *Miller* was a sentence of life without the possibility of parole, "the heart of the problem with such a sentence" is not the length of the sentence, but the imposition of a mandatory sentence on a juvenile without accounting for the offender's age and other "age-related

characteristics." As such, defendant claims that the reasoning in *Miller* should be extended to essentially any statute that imposes a mandatory minimum sentence on a juvenile without allowing the sentencing court to consider the offender's status as a juvenile.

The state responds that the rule established in *Miller* does not apply to ORS 137.707(2) because that statute does not require a life sentence without parole. In the state's view, *Miller* hinged on *both* the mandatory nature of the sentence and the lifetime nature of the sentence. The state also points out that, under Oregon's constitution, a trial court can take a defendant's age into account when imposing sentence under ORS 137.707(2). That is so because a defendant may bring an "as applied" Article I, section 16, challenge to a sentence imposed under ORS 137.707(2) (and Measure 11 generally). And, as we previously noted in our discussion of *Rodriguez/Buck*, an "as applied" challenge may require the sentencing court to consider characteristics of a defendant (including age-related characteristics). After considering those characteristics and other factors, if a sentencing court rules that a statutorily prescribed sentence would be unconstitutional as applied, the court may refuse to impose the prescribed sentence. Therefore, according to the state, ORS 137.707(2) is distinguishable from the scheme at issue in *Miller*. Finally, the state points out that ORS 137.707(2) has an "escape clause" that takes into account the offender's age in certain circumstances, *see* ORS 137.712(2)(e), and is therefore distinguishable from the schemes at issue in *Miller* for that additional reason.

We agree with the state that *Miller* does not extend Eighth Amendment jurisprudence in such a way as to render ORS 137.707(2) facially unconstitutional. Simply put, ORS 137.707(2) does not mandate life imprisonment without parole for those under the age of 18 at the time of their crimes and we understand *Miller*'s reach to be limited to such a penalty.[4] The Court emphasized that the statutory schemes at issue in *Miller* ran "afoul of [the Court's] cases' requirement of individualized sentencing for defendants facing *the*

---

[4] Given our resolution of the issue, we need not decide the merit of the state's other reasons for why ORS 137.707(2) does not run afoul of the Eighth Amendment.

*most serious penalties." Id.* at ___, 132 S Ct at 2460 (emphasis added). In explaining that decision, the Court noted that *Graham* and *Roper* acknowledged that, "[b]ecause juveniles have diminished culpability and greater prospects for reform, * * * 'they are less deserving of the most severe punishments.'" *Id.* at ___, 132 S Ct at 2464 (quoting *Graham,* 560 US at 68). And, in explaining the court's rationale for its ultimate conclusion that mandatory life imprisonment without parole violates the Eighth Amendment, the Court's opinion is replete with terms such as "the law's harshest term of imprisonment" and "lengthiest possible incarceration." *Id.* at ___, 132 S Ct at 2466. In short, we are convinced that the Court's holding in *Miller* was, as the state argues, hinged on *both* the mandatory nature of the sentence and the lifetime nature of the sentence. Accordingly, we conclude that defendant's Eighth Amendment facial challenge to ORS 137.707(2) on the basis of *Miller* fails.

Affirmed.