SHORR, J.
*751 Defendant appeals from a judgment entered after a jury found him guilty of first-degree sodomy (Count 1), ORS 163.405, and first-degree sexual abuse (Count 2), ORS 163.427. Defendant assigns error to the trial court's imposition of a 300-month mandatory minimum sentence of imprisonment under ORS 137.700 on Count 1, on the ground that the sentence violates Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. We address that assignment below. Defendant also assigns error to the court's denial of a requested "witness false in part" instruction, which we reject without further *1178 discussion.[1] UCrJI 1029. For the following reasons, we remand for reconsideration of defendant's sentence and otherwise affirm.
In 2015, defendant was a 30-year-old man with a lifelong history of intellectual disability who lived in Reno, Nevada, with his elderly grandparents. Defendant's primary source of income was Social Security benefits, and his grandparents were designated as his official guardians and Social Security payees. In the summer of 2015, defendant traveled with his grandparents from Reno to Oregon to visit with family. They stayed in a camper trailer parked outside the home of K, a four year old. The day before the visit was planned to end, the family held a cookout at K's home. During the cookout, K's mother (defendant's cousin) noticed that K was missing. She yelled for her son, and she heard defendant respond from around the corner, "He's with me." Defendant and K then returned through a gate in the yard, coming from the direction of the camper.
After defendant and his grandparents left, K's mother noticed a bruise on K's penis when she was giving him a bath. She asked K what happened, and he told her that defendant "took him to the trailer and pulled his pants *752 down and licked and bit his wiener." K's mother then took two videos of K with her cell phone. In the videos, K again said that defendant bit and licked him, and that defendant "tried to stop me when I was trying to tell mommy when she was inside." K said that defendant told him, "Racecar go. Racecar stop. Don't tell mommy." K was referred to CARES Northwest by his pediatrician, where he underwent a physical examination and forensic interview. K told the examiner that defendant licked and bit his penis.
In a pretext phone call, K's father confronted defendant about having sexual contact with K. Defendant told him, "I didn't do that. I'm not that way. I don't do stuff like that." A Reno police detective, working in conjunction with Washington County law enforcement, interviewed defendant, and defendant again denied having sexual contact with K. The Reno detective's report reflected that defendant stated
"that he had been around kids a long time and he had never done 'stuff,' and he had never been curious. He added [that] he was not interested in sexual stuff 'cuz it's bad and I don't do it cuz I'm always busy working and making money.' He then said that sexual stuff was bad because, 'you get in trouble and it would be on your record.'
"*** He added [that] he had never had sexual intercourse with anyone, and that if he was curious about something sexual, he would ask his grandparents."
Defendant was charged with first-degree sodomy, ORS 163.405, and first-degree sexual abuse, ORS 163.427. A jury found defendant guilty of both crimes. At sentencing, defendant argued that the imposition of a 300-month sentence was unconstitutionally disproportionate, as applied to defendant, because of defendant's intellectual disability. In support of his argument, defendant submitted to the trial court a psychological evaluation, performed by Dr. Colistro.
Colistro reviewed defendant's education and mental health records. The records showed that defendant had been diagnosed with mental retardation in 1998. Defendant underwent an IQ test in 1999 that yielded a full-scale IQ of 46, which is below the first percentile. Colistro reviewed a psychological evaluation from 1999, which stated that
*753 "[defendant] is functioning with very limited cognitive ability... at the first grade level academically. Adaptive functioning level is 2/3rd of his chronological age... [Defendant] has been receiving special services as developmentally delayed and under mental retardation since he entered school... failed to master developmental milestones as a toddler and his lack of cognitive ability and functioning skills are documented from preschool years... evaluation of intellectual functioning *1179 ... indicates a full scale intelligence quotient two or more standard deviations below the mean..."
(Ellipses in original.) Colistro also reviewed police records. In one police report, a Washington County Sheriff's deputy, Chedester, wrote of receiving "psychological and special education reports" from defendant's grandmother.[2] As described in Colistro's report, Chedester's report described those documents as revealing that defendant
"functions at the first grade level academically in spite of being thirty years of age. His Communication Skills Score Equivalent is that of a four-six year old. His activities of daily living are at the level of a seven to eleven year old. Composite scores provide an equivalent [age] of eight years [old]."
Defendant had a special-education curriculum in public school, and during high school was given a job in the cafeteria in lieu of attending classes beyond the scope of his abilities. Defendant graduated with a special diploma and a "straight A average," although he never learned to read or write. His family reported that he functions at about a first-grade level.
Colistro performed a psychosexual violence risk assessment. Defendant scored very low overall for risk of recidivism. The assessment revealed "the absence of any criminal proclivities in general or sexually deviant proclivities in particular" in defendant. Colistro concluded that defendant was a "severely developmentally delayed *754 individual who will function socially at the level of a child for the rest of his life." Regarding defendant's understanding of his crime, Colistro concluded that
"it is commonplace for individuals with [defendant's] severe level of impairment to engage in sexual activities with others functioning at about their same level intellectually and socially. Such children essentially form an intellectually and socially impaired adult peer group. [Defendant] is comfortable with them, since he operates mentally at the same concrete, simplistic level as they do."
Defendant relied on Colistro's report to argue to the trial court at the sentencing hearing that the mandatory minimum sentence was unconstitutionally disproportionate in light of defendant's severe intellectual disability, his lack of criminal history, and his low risk of recidivism.
The state argued that the imposition of a 300-month sentence for first-degree sodomy was not constitutionally disproportionate as applied to defendant because, despite his intellectual disability, defendant understood the wrongful nature of his conduct. The state submitted a presentence investigation report, which accounted for Colistro's evaluation and defendant's limited cognitive abilities but concluded that the 300-month mandatory minimum sentence was appropriate. The report asserted that defendant was "very well aware of the legal consequences of his actions" because defendant stated that he had "been taught that sexual contact with minors was inappropriate and 'was bad because you get in trouble and it would be on your record,' according to police reports."[3] The state acknowledged that it was "possible" for the trial court to depart from the mandatory minimum sentence but argued that, in this case, doing so would be inappropriate because of the age of the victim and the fact that defendant "clearly understands the nature of the crime."
The trial court followed the recommendation of the state and imposed the mandatory minimum sentence of 300 months for Count 1 and 75 months for Count 2, to be served *755 concurrently, for a total of 300 months in prison. The court ruled that a 300-month *1180 sentence was not constitutionally disproportionate, reasoning as follows:
"So on Count 1 there is the statutory requirement that I impose the 300-month sentence. Given the nature of this crime, the fact that there was an extremely vulnerable victim-and I will take into account, obviously, [defendant's] limited abilities.
"However, I do believe that this type of individual is going to be around small children, and these are vulnerable victims, and I don't see anything, based on the legislative intent and the Court of Appeals rulings, that there's any reason to depart from that mandatory sentence."
Defendant now appeals his 300-month sentence for Count 1,[4] arguing that ORS 137.700 is constitutionally disproportionate as applied to him because of his severe intellectual disability.
We review a trial court's decision that a sentence is constitutionally proportionate under Article I, section 16, for legal error, and we accept the trial court's findings of historical fact if they are supported by evidence in the record. State v. Ryan , 361 Or. 602, 614-15, 396 P.3d 867 (2017). Defendant raises arguments under Article I, section 16, and the Eighth Amendment. We first analyze whether defendant's sentence as applied to defendant was disproportionate under the Oregon Constitution, and we consider defendant's federal constitution claim only if we conclude that no state constitutional violation occurred. State v. Newcomb , 359 Or. 756, 764, 375 P.3d 434 (2016).
Article I, section 16, requires that "all penalties shall be proportioned to the offense." The driving principle for deciding whether a sentence is unconstitutional under Article I, section 16, is whether " 'the punishment [is] so proportioned to the offense committed [that it] shock[s] the moral sense of all reasonable [people] as to what is right and proper under the circumstances.' " State v. Wheeler , 343 Or. 652, 668, 175 P.3d 438 (2007) (quoting *756 Sustar v. County Court of Marion County , 101 Or. 657, 665, 201 P. 445 (1921) ). The legislature has primary authority to determine the appropriate length of punishment for a given crime, and only in rare instances when the legislature has exceeded its authority may a court conclude that a particular punishment is constitutionally disproportionate. Ryan , 361 Or. at 612, 396 P.3d 867 ; State v. Althouse , 359 Or. 668, 683-84, 375 P.3d 475 (2016). The Oregon Supreme Court has identified the following three factors for determining whether a sentence is constitutionally disproportionate to the offense, as applied to a particular defendant:
"(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant."
State v. Rodriguez/Buck , 347 Or. 46, 58, 217 P.3d 659 (2009).
Defendant raises arguments under each of the three Rodriguez/Buck factors; however, given our resolution of defendant's argument under the first factor-that in light of defendant's intellectual disability, the gravity of his offense compared to the 300-month imprisonment sentence renders his sentence disproportionate under Article I, section 16-we need not address the others. Defendant argues that uncontroverted evidence in the record shows that defendant has the overall mental functioning of an eight year old. Because ORS 161.290 sets the minimum age for criminal liability at 12 years old, defendant argues, the 300-month minimum sentence, which may be constitutional as applied to an ordinary adult, is constitutionally disproportionate when applied to defendant because of his limited cognitive abilities. We do not resolve that issue here because, as discussed below, we conclude that the record does not demonstrate that the trial court considered the constitutional implications of defendant's limited cognitive abilities in deciding whether a 300-month sentence was proportionate.
*1181 The personal characteristics of a defendant are relevant when considering whether a penalty is constitutionally disproportionate as applied to that defendant. Rodriguez/Buck , 347 Or. at 62, 217 P.3d 659 ("[A] court may consider, among other things, the specific circumstances and facts *757 of the defendant's conduct that come within the statutory definition of the offense, as well as other case-specific factors, such as characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim."). At the time that defendant was sentenced, our case law held that a defendant's intellectual capacity is a relevant personal characteristic that may be considered. After defendant was sentenced, however, the Supreme Court decided Ryan , 361 Or. at 621, 396 P.3d 867, in which it held that, when evidence of a defendant's intellectual disability is offered for the purpose of challenging the proportionality of a sentence under Article I, section 16, that evidence "must" be considered. See also State v. Allen , 294 Or. App. 301, 314, 432 P.3d 250 (2018) (case remanded for resentencing because record did not establish that the trial court in fact considered offender's intellectual disability when considering his as-applied challenge); State v. Sanderlin , 276 Or. App. 574, 368 P.3d 74 (2016) (the trial court erred in not considering the defendant's impaired intellectual functioning in determining the disproportionality of his sentence).
Regarding the extent to which a trial court must consider a defendant's intellectual disability on the record, the court held in Ryan that it was insufficient for the trial court to "generally note" the fact of an offender's intellectual disability; rather, the court must address the "constitutional implications" of a defendant's intellectual disability on the gravity of the sentence. 361 Or. at 624, 396 P.3d 867. The court acknowledged that, ordinarily, in the absence of express findings on the record, we presume that a trial court resolved factual disputes consistent with its ultimate conclusion. Id. (citing Ball v. Gladden , 250 Or. 485, 487, 443 P.2d 621 (1968) ). However, the court held that that presumption does not apply when a trial court fails to address on the record a defendant's intellectual disability in comparison to the gravity of the offense because "we would have to speculate to conclude that the court properly considered that factor and made any related factual findings with respect to it." Id. at 624-25, 396 P.3d 867.
Here, the state argues that, although the trial court's comment on defendant's disability was brief, the record reflects that the court considered defendant's disability when ruling that 300 months was a constitutionally *758 proportionate sentence in keeping with the requirement set forth in Ryan . The state's argument fails because, after Ryan , we cannot presume in the absence of express findings that a trial court properly considered a defendant's intellectual disability in comparing the gravity of the offense with the severity of the sentence. Here, the record, at least, does not demonstrate that the court adequately considered defendant's disability when addressing the constitutional proportionality of a 300-month sentence, as applied to defendant.
Ryan illustrates that point. The defendant in that case pleaded guilty to, among other crimes, first-degree sexual abuse against a nine-year-old victim and a 14-year-old victim. 361 Or. at 604, 396 P.3d 867. The defendant had an IQ between 50 and 60, and uncontroverted evidence in the record indicated that the defendant's mental age was approximately 10 years old. Id. at 606, 396 P.3d 867. At sentencing, the defendant challenged the imposition of a mandatory-minimum 75-month sentence as disproportionate in violation of Article I, section 16. Id . The trial court "generally noted" that the defendant was intellectually disabled.[5] Id. at 624, 396 P.3d 867. The *1182 Supreme Court reversed and remanded, reasoning that, although
*759 "the trial court generally noted defendant's intellectual disability ***, the court did not address its implications in rejecting his proportionality challenge. That missing linkage is problematic, because it suggests that, although the court appeared to grasp the factual foundation of defendant's argument, it did not fully appreciate its constitutional implications."
Id . The court went on to explain that, although ordinarily we are to presume that the trial court resolved its factual disputes in a manner consistent with its ultimate decision, "where, as here, the court did not address defendant's intellectual disability in comparing the gravity of defendant's offense with the severity of the Measure 11 sentence, we would have to speculate to conclude that the court properly considered that factor and made any related factual findings with respect to it." Id. at 624-25, 396 P.3d 867 (citing Ball , 250 Or. at 487, 443 P.2d 621 ).
As to how a trial court is to consider a defendant's intellectual disability when analyzing the proportionality of a sentence, the court held that a one-size-fits-all approach is inappropriate. Instead, the court concluded that
"a sentencing court's findings, among other factual considerations, as to an intellectually disabled offender's level of understanding of the nature and consequences of his or her conduct and ability to conform his or her behavior to the law, will be relevant to the ultimate legal conclusion as to the proportionality-as applied to the offender-of a mandatory prison sentence."
Id . at 621, 396 P.3d 867. Therefore, when presented with the issue in making a proportionality analysis under Article I, section 16, and Rodriguez/Buck , a trial court must consider an offender's intellectual disability on the record, Allen , 294 Or. App. at 313, 432 P.3d 250, and in doing so it should consider the effect that the disability, if credited, has on the offender's ability to understand the nature and consequences of his or her conduct and ability to conform his or her behavior to the law.
As noted, here the trial court did not have the benefit of Ryan 's conclusions or its discussion of how a defendant's age-specific intellectual capacity, including the defendant's level of adaptive functioning, affects the proportionality of that defendant's sentence. At the sentencing hearing, the *760 trial court announced that it was taking defendant's disability "into account," but it made no additional on-the-record statements regarding the effect that defendant's disability had on his ability to understand the wrongfulness of his conduct or conform his conduct to the law. Instead, the court emphasized the vulnerability of the four-year-old victim and the need to incapacitate defendant and specifically deter him from committing future crimes against other children:
"So on Count 1 there is the statutory requirement that I impose the 300-month sentence. Given the nature of this crime, the fact that there was an extremely vulnerable victim-and I will take into account, obviously, [defendant's] limited abilities .
"However, I do believe that this type of individual is going to be around small children, and these are vulnerable victims, and I don't see anything, based on the legislative intent and the Court of Appeals rulings, that there's any reason to depart from that mandatory sentence."
(Emphasis added.) While that emphasis was not improper, a trial court must also consider the "constitutional implications" of a defendant's disability on the proportionality of his *1183 or her sentence. Ryan , 361 Or. at 624, 396 P.3d 867. The record here, at least, does not reflect that the trial court-which did not have the benefit of Ryan when it sentenced defendant-met that requirement.
Ryan also emphasized the extent to which a defendant's level of adaptive functioning could diminish the penological aims of deterrence and retribution. 361 Or. at 618, 396 P.3d 867. The court questioned whether the defendant's adaptive functioning deficits, which were such that the defendant functioned at the approximate mental age of a 10 year old, limited the defendant's criminal responsibility, given that ORS 161.290(1) set the age for criminal responsibility at 12 years old. Id. at 623-25, 396 P.3d 867. A similar question is raised here, where the record shows that defendant has an "overall adaptive behavior composite assessment" equivalent to an eight-year-old child. Because the trial court did not have the benefit of Ryan , it could not adequately consider defendant's intellectual disability in the context of other case-specific factors, in assessing the proportionality of defendant's *761 sentence. It is for the trial court to make this assessment in the first instance.
Although the trial court stated that it was accounting for defendant's disability in making its determination, there is no indication on this record how the court viewed the implications of defendant's disability on his proportionality challenge, or whether it fully considered its constitutional implications. As in Ryan , on the record before us, it is impossible for us to do anything but speculate as to whether the court properly considered how defendant's disability affected the gravity of the offense, which is the first factor under Rodriguez/Buck . For that reason, we remand the case for resentencing.
Finally, we note that the state raises State v. Conrad , 280 Or. App. 325, 335, 381 P.3d 880 (2016), rev. den. , 360 Or. 851, 389 P.3d 1141 (2017), for the proposition that a trial court is not required to make explicit findings on the record when the record does not indicate that the court misapprehended the relevant factors that it could consider in assessing whether a mandatory minimum sentence is constitutionally disproportionate. That argument is unavailing. The holding in Conrad was based on the general rule that we presume that a trial court resolves factual disputes consistent with its ultimate disposition in the absence of express findings. Ball , 250 Or. at 487, 443 P.2d 621. However, as explained above, that general presumption does not apply when a trial court does not address a defendant's intellectual disability in comparing the gravity of the defendant's offense with the severity of his or her sentence. Ryan , 361 Or. at 624-25, 396 P.3d 867. In other words, our typical presumptions under Ball do not apply where, as here, we would have to speculate to conclude that the court properly considered the effect of a defendant's disability in making a proportionality determination. Like the court did in Ryan , we conclude that the trial court erred in failing to adequately consider, on the record, defendant's intellectual disability with regard to the comparison of the gravity of defendant's offense and the severity of the 300-month imprisonment sentence. We remand so that the court will have the opportunity to do so.
Because we remand for resentencing under defendant's arguments under the Oregon Constitution, we do not *762 reach his Eighth Amendment argument under the federal constitution. The case is remanded for resentencing in a manner consistent with this opinion.
Remanded for resentencing; otherwise affirmed.

Additionally, after the initial briefing was complete and following oral argument, defendant filed a supplemental brief that included a supplemental assignment of error that assigned error to the trial court's instruction to the jury that it could return a nonunanimous verdict. Defendant contends that the Sixth and Fourteenth Amendments to the United States Constitution require unanimous jury verdicts. We reject that argument on the merits without further discussion.

Neither the psychological evaluation reviewed by Colistro, Chedester's police report, nor the psychological and special education reports furnished to Chedester by defendant's grandmother are in the record, but both the presentencing investigation report and Colistro's report describe the contents of these documents as they were described in the Washington County police report.

Defendant concedes in his brief that the presentence investigation report contains evidence that defendant understood, at least abstractly, that engaging in sexual contact with a minor is wrong.

Defendant does not challenge the constitutionality of his 75-month sentence on Count 2 for first-degree sexual abuse.

The trial court in Ryan stated:
"This Court, based upon the record before me, would find that [defendant] is of mild to moderate cognitive-or possesses a mild to moderate cognitive disability. That based upon the exhibits presented and the file materials that, [defendant], there is a danger to our community [in] placing you out in the community. I have, again, based upon this record, a great deal of respect for [the proposed treatment] program, and think that would be appropriate but for the Measure 11 sentence-or the Measure 11 guidelines that have been laid out by the Legislature as well as by the courts, particularly in Rodriguez/Buck . When considering the Oregon Constitution, specifically Article [I], [s]ection 16 of the Oregon Constitution [,] as well as the Eighth Amendment of the U.S. Constitution as applied to you, [defendant], I do not find, under this record, that your sentence under Measure 11 shocks the conscience of this Court with regard to the underlying factual admissions that have been made. It is a challenge for any court [when] the Legislature decides to remove the Court's ability to fashion an appropriate remedy for somebody who possesses your background and disability, but I do believe that your-the analysis of Rodriguez/Buck that-and Measure 11, that I would have to find shocking of the conscience before I move into that, though I would hope that that would change, and I may be applying it inaccurately, that seems to be the out-the paradigm that has been laid out by the courts in light of Measure 11."
361 Or. at 609-10 n. 2, 396 P.3d 867.